UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSEPH A. CARABILLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ULLICO INC., | ) |
| | ) |
| Defendant. | ) |

CASE NUMBER:  03-1556(RJL)

DECK TYPE:  Labor/ERISA (non-employment)

## MOTION FOR SUMMARY JUDGMENT

Defendant ULLICO Inc. ("ULLICO"), by counsel and pursuant to Fed. R. Civ. P.

12(b)(6) and 56(b), hereby moves this Court for entry of summary judgment as to all claims in

Counts I through III of the Complaint filed herein, on the grounds that there are no genuine

issues of material fact and ULLICO is entitled to judgment in its favor as a matter of law, as set

forth in detail in the attached Memorandum of Points and Authority, Statement of Material Facts

as to Which there is No Genuine Issue, and supporting Declaration.

WHEREFORE, Defendant ULLICO Inc., moves this Court to grant its Motion for

Summary Judgment and enter an Order: (1) dismissing Plaintiff's Count I without prejudice or,

alternatively, staying Count I until Carabillo exhausts his administrative remedies available

under the ERISA plan at issue; (2) dismissing with prejudice Counts II and III; and (3) awarding

Defendant such other and further relief as the Court deems just and proper.

ULLICO Inc.
By Counsel

Dated: September 3, 2003

MILLER & CHEVALIER CHARTERED

By _____

James A. Bensfield (DC Bar #189-084)
Anthony J. Trenga (DC Bar #218255)
Mark J. Rochon (DC Bar #376042)
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com
Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSEPH A. CARABILLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ULLICO INC., | ) |
| | ) |
| Defendant. | ) |

CASE NUMBER:  03-1556(RJL)

DECK TYPE:  Labor/ERISA (non-employment)

## MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF ULLICO INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant ULLICO Inc. ("ULLICO") has filed a motion for Summary Judgment and submits the following Memorandum in support thereof.

### Introduction

Plaintiff Joseph A. Carabillo ("Carabillo") seeks, *inter alia*, relief related to ULLICO's decision not to pay him benefits under its Early Retirement Plan (adopted in April 2003) because ULLICO had terminated his employment as Chief Legal Officer "for cause" prior to the effective date of his early retirement.[1]  In support of his claim for relief, Carabillo has filed a three count Complaint, which consists of a federal statutory claim under ERISA and two common law claims.  With respect to his federal ERISA claim (Count I), Carabillo has failed to exhaust the

---

[1] ULLICO notes that the only pension benefits at issue are the enhanced benefits that Plaintiff would receive if he were otherwise eligible to participate in the June 1, 2003, Early Retirement Plan.  Under the terms of the ULLICO Inc. Pension Plan and Trust (the "Plan"), Plaintiff satisfied the Plan's vesting requirements, and Plaintiff is eligible, upon his election, to receive an early retirement benefit under the Plan's general early retirement option.  The general early retirement benefit, however, would be reduced based on a certain stated formula.  The benefit enhancement at issue in this litigation would eliminate the otherwise applicable reduction in pension benefits that is attributable to early retirement.

administrative remedies available to him under the pension plan at issue[2], and Carabillo's two

common-law claims (Counts II and III) are preempted under ERISA.  As a result, this Court

should dismiss Carabillo's complaint in its entirety or, alternatively, dismiss Counts II and III

and stay proceedings with respect to Count I until Carabillo has exhausted the available

administrative remedies.

## Background

Conspicuously absent from Carabillo's Complaint is any discussion regarding the events

leading up to his termination.  The decision to terminate Mr. Carabillo was made after an

independent investigation – led by former Illinois Governor James R. Thompson -- concluded

that there was a "compelling argument" that Carabillo and former CEO, President, and Board

Chairman Robert A. Georgine ("Georgine") failed to satisfy their fiduciary obligations to

ULLICO when they orchestrated and participated in insider stock transactions that yielded

millions of dollars in personal windfalls to themselves and a number of other senior ULLICO

executives and directors.  See Executive Summary of the Report of the Special Counsel,

ULLICO Stock Purchase Offer and Repurchase Programs and Global Crossing Investment (the

"Thompson Report") at 6, attached hereto as Exhibit A.  The underlying events discussed in the

Thompson Report are the subject of investigations, still ongoing, by a federal grand jury, the

United States Securities and Exchange Commission, the Maryland Insurance Administration, the

United States Department of Labor, the Government Affairs Committee of the United States

---

[2] Carabillo actually seeks benefits from two separate plans: (1) pension benefits from the ULLICO Inc. Pension Plan and Trust and (2) health and life insurance benefits from the ULLICO Inc. Employees' Life and Health Welfare Plan (Policy numbers G-908 and C-2054).  However, Carabillo's complaint fails to differentiate between the plans, and therefore, for ease of reference, ULLICO will simply refer to the separate plans as a singular "Plan."  Carabillo has also failed to join the Plans or other appropriate entities or parties as proper party defendants.  ULLICO, however, does not seek a dismissal on this basis at this time since this defect can be cured without burdening the Court were this matter to proceed.  See, e.g., Everhart v. Allmerica Financial Life Ins. Co., 275 F.3d 751, 754-756 (9th Cir. 2001) (holding that the proper party defendants in an ERISA § 502(a) claim for benefits are the Plan, the Plan Administrator(s), or plan fiduciaries); Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) (same); Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996) (same).

Senate, the Education and Workforce Committee of the United States House of Representatives, and the newly constituted ULLICO Board of Directors.

While Carabillo now claims that he went on "administrative leave" in March, 2003, (Complaint at ¶ 12), the minutes of the March 28, 2003, meeting of the ULLICO Board of Directors note that "Joe Carabillo is stepping aside as the Company's Chief Legal Officer." Minutes of the March 28 Meeting of the Board of Directors of ULLICO Inc., attached hereto as Exhibit B. In fact, the Board did not approve the Early Retirement Plan that Carabillo relies upon until April 16, 2003 – over two weeks after the Board was told he was "stepping aside." See Minutes of April 16, 2003 Meeting of Board of Directors of ULLICO Inc., attached hereto as Exhibit C (approving the Early Retirement Plan).

By the Spring of 2003, with multiple state and federal investigations ongoing and serious questions regarding the conduct on the part of a number of senior ULLICO executives unresolved, major ULLICO shareholders determined that the company needed new leadership. On May 8, 2003, in the face of imminent and certain dismissal, Georgine resigned. See Letter from Robert Georgine to Terence O'Sullivan dated May 8, 2003, attached hereto as Exhibit D. Only in late May did Georgine's successor discover that Carabillo remained on the company payroll, whereupon Carabillo's employment was terminated "for cause" effective May 30, 2003, based on the findings and conclusions of the Thompson Report and the company's inability to "place its ongoing confidence in [Carabillo's] judgment." Letter from Acting ULLICO President Edward Grebow to Joseph Carabillo dated May 30, 2003, attached hereto as Exhibit E.

Carabillo purported to elect to participate in the Early Retirement plan by executing an Election and Release on May 7, 2003, a copy of which is attached hereto as Exhibit F. By email dated June 16, 2003, a copy of which is attached hereto as Exhibit G, Carabillo inquired about

3

his early retirement benefits.  On July 18, 2003, Carabillo instituted this action.  By letter dated

August 13, 2003, ULLICO's Director of Corporate Benefits timely notified Carabillo that he

treated Carabillo's email as a request for benefits and that his request had been denied.  In that

letter, it was explained that to be eligible for the Early Retirement Plan, Carabillo had to retire

effective June 1, 2003; and that Carabillo was ineligible for the Plan because he had been

terminated for cause before that time.  Carabillo was also advised of his right to appeal the

benefit denial, and the procedure to be followed for that appeal.  See Letter from Louis Hejl to

Joseph Carabillo dated August 13, 2003, attached hereto as Exhibit H.  To date, Carabillo has not

appealed the benefit denial.


## Summary of Argument

Summary judgment is proper "if there is no genuine issue as to any material fact and . . .

the moving party is entitled to a judgment as a matter of law."  Morgan v. Federal Home Loan

Mortg. Corp., 328 F.3d 647, 650 (D.C. Cir. 2003) (citing Anderson v. Liberty Lobby, 477 U.S.

242, 247 (1986)) (internal quotations omitted).

1.      With respect to Count I, Carabillo has failed to exhaust the administrative

remedies available to him under the Pension Plan at issue, and he therefore lacks standing to

pursue his statutory ERISA claim.

2.      Carabillo's common-law claims set forth in Counts II and III are preempted by

ERISA.

1.     **Count I (ERISA Violation) Should be Dismissed Because Carabillo Failed to Exhaust the Administrative Remedies Available Under the Plan**

Carabillo's first claim alleges a violation of § 510 of ERISA, 29 U.S.C. §1140, which

provides in pertinent part:

> It shall be unlawful for any person to discharge . . . a participant or
> beneficiary for exercising any right to which he is entitled under
> the provisions of an employee benefit plan.

Carabillo should not be allowed to advance this claim at this time because he has failed to

exhaust his administrative remedies under the Plan.

Under the Plan, "[a]ny question as to the entitlement to, or the calculation of, benefits

under the Plan shall be determined by the Plan Administrator . . . ." Article 9.1 of the ULLICO

Inc. Pension Plan and Trust as Amended and Restated Effective as of February 28, 2002,

attached hereto as Exhibit I. In the event a claim is denied, a participant may request a review of

that decision by the Plan Administrator within sixty days of receiving the denial of benefits. Id.

at Article 9.3.

Carabillo first requested his early retirement benefits via email on June 16, 2003. By

letter dated August 13, 2003, the Plan denied Mr. Carabillo's request for benefits. To date,

Carabillo has not requested a review of the denial of benefits, as required under the Plan's terms.

Carabillo therefore has failed to exhaust his administrative remedies.

While Carabillo's complaint seeks to invoke § 510, it is clear that he is simply seeking

benefits from an ERISA-covered plan, a claim that is properly brought under ERISA §

502(a)(1)(B).[3] Specifically, Carabillo's Complaint asserts damages in the form of "lost pension

payments, lost health insurance coverage, and lost life insurance coverage." Complaint ¶ 17.

---

[3] § 502(a)(1)(B) provides that a civil action may be brought by a participant in an ERISA-covered plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Accordingly, his claim should be treated as one for benefits under the Plan.  In this regard, "it is

well established that, barring exceptional circumstances, plaintiffs seeking a determination

pursuant to ERISA of rights under their pension plans 'must . . . exhaust available administrative

remedies under their ERISA-governed plans before they may bring suit in federal court.'"

Communications Workers of America, et al. v. AT&T, 40 F.3d 426, 431 (D.C. Cir. 1994)

(quoting Springer v. Wal-Mart Assocs. Group Health Plan, 908 F.2d 897, 899 (11th Cir. 1990)).

        Even were Count I treated as a claim under § 510, Carabillo should be required to

exhaust his administrative remedies where, as here, the claim is in effect a claim for benefits.

See Mason v. Continental Group, Inc., 763 F.2d 1219, 1227 (11th Cir. 1985) (finding

"compelling reasons" for imposing the administrative exhaustion requirement on statutory

ERISA claims and noting that such a requirement "appears to be consistent with the intent of

Congress that pension plans provide intrafund review procedures"); Kross v. Western Electric

Co., 701 F.2d 1238, 1245 (7th Cir. 1983) (finding that "well-established federal policy, and

supporting case law, favor[ed] exhaustion of administrative remedies prior to bringing" a claim

under § 510); contra, e.g., Zipf v. American Tel. & Tel. Co., 799 F.2d 889 (3d Cir. 1986)

(finding that the administrative exhaustion requirement did not apply to claims brought under §

510); Chailland v. Brown & Root, Inc., 45 F.3d 947 (5th Cir. 1995) (same).  Although the D.C.

Circuit has not yet ruled on this issue, the particular circumstances of this case and the relief

sought by Carabillo make exhaustion of the Plan remedies appropriate.[4]

---

[4] ULLICO brings to the Court's attention that, while the United States Court of Appeals for the District of Columbia
Circuit has yet to squarely address this issue, judges of this court have found that the administrative exhaustion
requirement should not apply to § 510 claims.  See Coleman v. Pension Benefit Guar. Corp., 94 F. Supp. 2d 18
(D.D.C. 2000) (Harris, J. presiding); Greer v. Graphic Communications Int'l Union, 941 F. Supp. 1, 3 (D.D.C. 1996)
(Robertson, J. presiding); Garvin v. American Association of Retired Persons, C.A. No. 89-3348 1992 U.S. District
LEXIS 2013 (JHG) (D.D.C. Feb 27, 1992) (Green, J. presiding).  Nevertheless, and in the absence of any controlling
authority, ULLICO urges the Court to exercise its discretion under the particular circumstances of this case to
require that Carabillo first exhaust his administrative remedies under the plan before to bringing suit under § 510.
See Kross, 701 F.2d. at 1244 (holding that the application of the administrative exhaustion doctrine "is committed to

Carabillo, by his own description, seeks damages under § 510 that consist of "losses in the form of lost pension payments, lost health insurance coverage, and lost life insurance coverage." Complaint at ¶ 17.[5] Considering that the *damages* sought by Carabillo in Count I amount to nothing more than the benefits available under the ERISA governed plan, this Court should require Carabillo to engage in the same administrative appeal process that pertains to claims for those benefits. Given the possibility that the Plan Administrator may, upon review, grant his claim for benefits, the Court should await the outcome of the process since, were Carabillo successful before the Plan Administrator, his ERISA claims would be effectively moot. Had Carabillo framed his claim as a straightforward claim for benefits enforceable under § 502 of ERISA, 29 U.S.C. § 1132, there is no question that he would be required to exhaust the Plan remedies. There is no logical reason why Carabillo should be able to avoid through artful pleading the ERISA plan requirements when seeking ERISA plan benefits.

Count I should be dismissed or, alternatively, this Court should enter a stay with respect to Count I, pending resolution of the administrative claims process.

**2.     Counts II (Breach of Contract) and III (Wrongful Termination) are Preempted by ERISA and Should Be Dismissed**

Section 514(a) preempts state laws, including state common law causes of action, "insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a).

In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987), the Supreme Court recognized that:

---

the sound discretion of the [trial] court . . .") citing Janowski v. International Bhd. of Teamsters Local 710 Pension Fund, 673 F.2d 931, 935 (7th Cir. 1982). Otherwise, Plaintiff will be able to circumvent the clear obligation that he exhaust his administrative remedies.

[5] Carabillo does claim common law compensatory and punitive damages. However, these damages, like the common law claims, are preempted under ERISA. See *infra* at 7-10.

> [T]he detailed provisions of § 502(a) set forth a comprehensive
> civil enforcement scheme that represents a careful balancing of the
> need for prompt and fair claims settlement procedures against the
> public interest in encouraging the formation of employee benefit
> plans. The policy choices reflected in the inclusion of certain
> remedies and the exclusion of others under the federal scheme
> would be completely undermined if ERISA-plan participants and
> beneficiaries were free to obtain remedies under state law that
> Congress rejected in ERISA.

See also Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985)

(holding that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) of

[ERISA] . . . provide strong evidence that Congress did *not* intend to authorize other remedies

that it simply forgot to incorporate expressly. The assumption of inadvertent omission is

rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and

interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated

statute.'") (quoting Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 361

(1980)).

      This Court has recognized that "Congressional intent has been interpreted to mandate

preemption of judicially created common law causes of action in employee benefit plan

contexts." Moore v. Blue Cross & Blue Shield of the National Capital Area, 70 F. Supp. 2d 9,

18-19 (D.D.C. 1999). Indeed, "even general common law causes of action, *such as breach of

contract*, which were not specifically intended to apply to benefit plans covered by ERISA, will

nonetheless be preempted insofar they affect ERISA-protected rights." Board of Trustees of the

Hotel & Restaurant Employees Local 25 v. Madison Hotel, 97 F.3d 1479, 1486-87 (D.C. Cir.

1996) (emphasis added). This argument applies with equal force without respect to whether this

Court considers Claim I under ERISA § 510 or § 502(a).

As discussed below, Counts II and III of Carabillo's complaint for common-law breach of contract and wrongful termination are both preempted under § 514 of ERISA and should be dismissed.[6]

## Breach of Contract

Carabillo's second claim for relief attempts to recover Plan benefits through a common-law breach of contract action. See Complaint at ¶ 18 ("[D]efendant breached its contract rights with plaintiff concerning payment of pension benefits. . ."). As a result, his claim clearly "relates to" the ERISA plan by having "a connection with or reference to such a plan." Madison Hotel 97 F.3d at 1486 (citing Boren v. N.L. Industries, Inc., 889 F.2d 1463 (5th Cir. 1989)). As in Moore, where the plaintiff brought a breach of contract action in an attempt to recover benefits allegedly due under an ERISA-governed health care plan, Carabillo's claim for breach of contract does not "merely 'relate' to an employee benefit plan; [it] derive[s] from and exist[s] only by reason of the Plan." Moore, 70 F. Supp. 2d at 19. Take away the ERISA plan in this case and Carabillo's breach of contract claim disappears. Without the Plan, there is simply no contract to be breached. The interrelatedness of Carabillo's breach of contract claim and the Plan brings the claim fully within the preemption provisions of § 514(a).

---

[6] Nor should this Court allow Carabillo to skirt ERISA preemption by attempting to "tack-on" state common law claims seeking lost salary, unused vacation benefits, and mental and emotional distress, to his ERISA claims. In McDonald v. Artcraft Elec. Supply Co., 774 F. Supp. 29 (D.D.C. 1991) (Flannery, J. presiding), plaintiff alleged ERISA violations as well as common law claims for breach of contract, wrongful termination, and intentional infliction of emotional distress. The court rejected his argument that such common law claims were not preempted because they were brought in addition to, and not in lieu of, ERISA based claims. Id. at 32. The Court held that plaintiff failed to show that such "state law claims could somehow be resurrected by simply joining them to an ERISA claim based on the same employer conduct underlying the state claims." Id. Indeed, the court concluded that such a result was not "desirable" and that the plaintiff's "sole avenue of relief [was] to bring an ERISA action." Id.

**<u>Wrongful Termination</u>**

As with his contract claim, Carabillo's wrongful termination claim relates to, and derives from, his quest for pension benefits under the ULLICO Pension Plan. <u>See</u> Complaint at ¶ 22, where he seeks "pay *and benefits due to him*" and "*lost pension benefits*." (emphasis added). Here, Carabillo alleges that his termination was predicated on "an effort to deny him earned compensation *and vested pension benefits*" and was "specifically and intentionally" meant to "wrongfully attempt to deny him accrued compensation pay *and benefits*." Complaint at ¶¶ 1, 15 (emphasis added). Judged by Carabillo's own pleading, the "existence of a pension plan is a critical factor in establishing liability" under his wrongful discharge claim. <u>See Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 139-40 (1990). Thus, Carabillo's claim for wrongful discharge "relates to" and affects his ERISA-protected rights and is preempted under § 514(a).

The Supreme Court decision in <u>Ingersoll-Rand</u> disposes of this issue. There, the Court held that a state common law wrongful discharge claim was preempted by ERISA because it "falls squarely within the ambit of ERISA § 510." 498 U.S. at 142. "By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." <u>Id</u>. Furthermore, the Court found that such rights could be exclusively enforced through § 502(a). While noting that "the mere existence" of a federal enforcement mechanism does not automatically result in preemption, the Supreme Court determined that the exclusive enforcement mechanism provided in §502(a) constituted a "special feature" warranting a finding preemption. <u>Id.</u> at 144.

Here, Carabillo has asserted in Count I a claim for the same conduct that forms the basis of his common-law wrongful termination claim. Indeed, his common law claim is simply his § 510 claim in a different guise. Regardless of how it is dressed, Carabillo's wrongful discharge

claim is preempted.  Congress provided in § 510 an exclusive remedy for precisely the kind of

behavior that Carabillo alleges, and a mechanism for obtaining relief for such actions in § 502(a).

## Conclusion

For the foregoing reasons, ULLICO requests that this Court grant ULLICO's motion for

summary judgment and dismiss Carabillo's Complaint or, alternatively, dismiss Counts II and

III, and enter a stay of further proceedings with respect to Count I until such time as Carabillo

exhausts the administrative remedies available under the Plan.


Respectfully Submitted,

ULLICO Inc.

Dated: September 3, 2003

MILLER & CHEVALIER CHARTERED

By _____
James A. Bensfield (DC Bar #189-084)
Anthony J. Trenga (DC Bar #218255)
Mark J. Rochon (DC Bar #376042)
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com
Attorneys for Defendant

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH A. CARABILLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ULLICO INC., | ) |
| | ) |
| Defendant. | ) |

CASE NUMBER:  03-1556(RJL)

DECK TYPE:  Labor/ERISA (non-employment)

## STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Federal Rule of Civil Procedure 56(c) and LCvR 56.1, ULLICO Inc. ("ULLICO") submits in support of its Motion for Summary Judgment, filed herewith, the following statement of undisputed facts as to which it contends there are no genuine issues:

1. On or about April 29, 2002, ULLICO hired Governor James R. Thompson and the firm of Winston & Strawn to serve as Special Counsel to investigate certain stock transactions engaged in by ULLICO employees and directors.

2. On November 26, 2002, Governor James R. Thompson issued the Report of the Special Counsel, ULLICO Stock Purchase Offer and Repurchase Programs and Global Crossing Investment (the "Thompson Report"), discussing the result of the Special Counsel investigation.  A copy of the Executive Summary contained in the Thompson Report is attached to ULLICO's Memorandum in Support of its Motion for Summary Judgment as Exhibit A.

3. The Thompson Report concluded at page six of the Executive Summary that there was a "compelling argument" that Joseph Carabillo ("Carabillo") and others had violated their fiduciary duties towards ULLICO. See Exhibit A.

4. The March 28, 2003, minutes of the ULLICO Board of Directors state that Carabillo is "stepping aside" as Chief Legal Officer, and do not state that he is taking early retirement or going on "administrative leave." See Exhibit B.

5. On April 16, 2003, the ULLICO Board of Directors passed a Resolution amending the Plan's early retirement. See Exhibit C.

6. ULLICO maintains a pension plan for its employees, known as the ULLICO Inc. Pension Plan and Trust (the "Plan"). The plan provides an administrative appeals process for beneficiaries who believe they were improperly denied benefits under the plan. See Exhibit I.

7. On or about May 7, 2003, Carabillo executed documents electing to take early retirement under the Plan, as amended by the Board on April 23, 2003. See Exhibit F.

8. On or about May 8, 2003, then CEO and Chairman of ULLICO, Robert A. Georgine, resigned. See Exhibit D.

9. On or about May 30, 2003, Joseph Carabillo was terminated by ULLICO "for cause." See Exhibit E.

10. On June 16, 2003, Carabillo sent an email to Louis Hejl, inquiring as to the status of his early retirement benefits. See Exhibit G.

11. On August 13, 2003, Louis Hejl, in response to Carabillo's email, wrote Carabillo to inform him that, because he was terminated for cause, he was not

entitled to early retirement benefits and advised him of his right to an

administrative review.  <u>See</u> Exhibit H.

12. Carabillo has not undertaken the administrative appeal process set forth in the

Plan to appeal the denial of benefits by the Plan Administrator.


Respectfully Submitted,

ULLICO Inc.

Dated: September 3, 2003

MILLER & CHEVALIER CHARTERED

By: _____
James A. Bensfield (DC Bar #189-084)
Anthony J. Trenga (DC Bar #218255)
Mark J. Rochon (DC Bar #376042)
655 Fifteenth Street, N.W., Suite 900
Washington, DC  20005-5701
Tel. (202) 626-5800
Fax. (202) 628-0858
atrenga@milchev.com
Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSEPH A. CARABILLO, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| ULLICO INC., | ) |
|  | ) |
| Defendant. | ) |

CASE NUMBER: 03-1556(RJL)

DECK TYPE: Labor/ERISA (non-employment)

## **ORDER**

Upon consideration of Defendant ULLICO Inc.'s Motion for Summary Judgment, Memorandum of Points and Authorities in Support thereof, and supporting Exhibits, Plaintiff's response thereto, and Defendant's reply, and for good cause shown, it is hereby

ORDERED that Defendant's Motion be, and the same hereby is, GRANTED; it is

FURTHER ORDERED that Count I of Plaintiff's Complaint be, and the same hereby is, DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies; and it is

FURTHER ORDERED that Counts II and III be, and the same hereby are, DISMISSED WITH PREJUDICE.

The Clerk is directed to forward copies of this order to counsel of record.

Entered this __ day of _____, 2003.

_____
Richard J. Leon
United States District Judge