ULLICO INC. PENSION PLAN AND TRUST

AS AMENDED AND RESTATED EFFECTIVE AS OF FEBRUARY 28, 2002

ULLICO INC. PENSION PLAN AND TRUST

AS AMENDED AND RESTATED EFFECTIVE AS OF FEBRUARY 28, 2002

TABLE OF CONTENTS

Page

ARTICLE 1 PURPOSE ................................................................................ 1

ARTICLE 2 DEFINITIONS ......................................................................... 1

2.1.  "Accrued Benefit" ...................................................................... 1

2.2.  "Actuarial Equivalent" ............................................................... 2

2.3.  "Actuary" .................................................................................... 2

2.4.  "Annuity Starting Date" ............................................................. 2

2.5.  "Applicable Mortality Table" ..................................................... 2

2.6.  "Authorized Leave of Absence" ................................................ 2

2.7.  "Average Salary" ........................................................................ 2

2.8.  "Beneficiary" .............................................................................. 3

2.9.  "Board" or "Board of Directors" ............................................... 3

2.10. "Break in Service" ...................................................................... 3

2.11. "Code" ........................................................................................ 3

2.12. "Commencement of Employment Date" .................................... 3

2.13. "Committee" ............................................................................... 3

2.14. "Compensation" .......................................................................... 3

2.15. "Continuous Service" ................................................................. 4

2.16. "Covered Compensation" ........................................................... 4

2.17. "Deferred Retirement Date" ....................................................... 5

2.18. "Deferred Vested Retirement Date" ........................................... 5

2.19. "Determination Date" ................................................................. 5

i



Page

2.20. "Disability" ................................................................ 5

2.21. "Disability Retirement Date" ........................................ 5

2.22. "Earliest Retirement Date" ........................................... 5

2.23. "Early Retirement Date" ............................................... 5

2.24. "Effective Date" .......................................................... 5

2.25. "Employee" ................................................................ 5

2.26. "Employer" ................................................................ 6

2.27. "Employment" ........................................................... 6

2.28. "Entry Date" .............................................................. 6

2.29. "ERISA" ................................................................... 6

2.30. "Fiduciary" ............................................................... 6

2.31. "Final Average Pay" .................................................... 7

2.32. "Final Three Year Average Pay" ................................... 7

2.33. "Five Percent Owner" ................................................. 7

2.34. "Hour of Service" ....................................................... 7

2.35. "Key Employee" ......................................................... 9

2.36. "Leased Employee" ..................................................... 9

2.37. "Normal Retirement Date" ......................................... 10

2.38. "Participant" ............................................................. 10

2.39. "PBGC" ................................................................... 10

2.40. "Pension" ................................................................. 10

2.41. "Plan" ...................................................................... 10

2.42. "Plan Administrator" ................................................. 10

Page

2.43.  "Plan Sponsor" ........................................................... 10

2.44.  "Plan Year" ................................................................. 10

2.45.  "Postponed Retirement Date," .................................... 10

2.46.  "Predecessor Plan" ..................................................... 10

2.47.  "Qualified Election" .................................................... 10

2.48.  "Qualified Joint and Survivor Annuity" ...................... 11

2.49.  "Retirement" ............................................................... 11

2.50.  "Retirement Benefit" ................................................... 11

2.51.  "Section" ..................................................................... 11

2.52.  "SERP" ........................................................................ 11

2.53.  "SERP Election Period" ............................................... 11

2.54.  "SERP Retiree" ............................................................ 11

2.55.  "Service" ...................................................................... 11

2.56.  "Social Security Retirement Age" ................................ 11

2.57.  "Social Security Taxable Wage Base" ......................... 12

2.58.  "Sponsoring Employer" ............................................... 12

2.59.  "Sponsoring Employer ULLICO Group" ...................... 12

2.60.  "Sponsoring Employer ULLICO Group Benefit" ........ 12

2.61.  "Sponsoring Employer ULLICO Group Compensation" ....... 12

2.62.  "Sponsoring Employer ULLICO Group Employee" .......... 12

2.63.  "Sponsoring Employer ULLICO Group Service" .................. 13

2.64.  "Sponsoring Employer ULLICO Group Years of
       Benefit Service" ......................................................... 13

2.65.  "Spouse or Surviving Spouse" .................................... 13



                                                                                    **Page**

2.66. "Trust" ........................................................................................... 14

2.67. "Trustee" ......................................................................................... 14

2.68. "Union Labor Plan" ........................................................................... 14

2.69. "Valuation Date" ............................................................................... 14

2.70. "Vested" ........................................................................................... 14

2.71. "Year of Benefit Service" .................................................................. 14

2.72. "Year of Service" ............................................................................. 14

2.73. "Zenith Central" ............................................................................... 15

2.74. "Zenith Central Benefit" .................................................................. 15

2.75. "Zenith Central Compensation" ........................................................ 15

2.76. "Zenith Central Employee" ............................................................... 15

2.77. "Zenith Central Plan" ...................................................................... 15

2.78. "Zenith Central Service" .................................................................. 15

2.79. "Zenith Central Year of Benefit Service." ......................................... 15

ARTICLE 3 PARTICIPATION IN THE PLAN ............................................... 16

3.1.  Participation ...................................................................................... 16

3.2.  Participation Requirements ............................................................... 16

3.3.  Ineligible Employees. ........................................................................ 17

3.4.  Cessation of Employment with Sponsoring Employer ........................ 17

3.5.  Reemployment with Sponsoring Employer. ....................................... 17

3.6  Election Not to Participate ................................................................. 18

3.7.  Veterans' Rights. ............................................................................... 18

ARTICLE 4 AVAILABILITY OF RETIREMENT BENEFITS ........................... 18

**Page**

4.1.  Normal Retirement. ...................................................... 18

4.2.  Postponed Retirement. ............................................... 18

4.3.  Early Retirement. ...................................................... 19

4.4.  Disability Retirement. ................................................. 20

4.5.  Deferred Vested Pension. ............................................ 21

4.6.  Reemployment After Retirement. ................................... 22

4.7.  Independence of Zenith Central and Sponsoring
      Employer ULLICO Group Benefits ................................ 23

ARTICLE 5 AMOUNT OF RETIREMENT BENEFIT ............................... 23

5.1.  Normal Retirement Benefit ........................................... 23

5.2.  Deferred Retirement Benefit ......................................... 25

5.3.  Early Retirement Benefit ............................................. 25

5.4.  Zenith Central Disability Retirement Benefit ...................... 26

5.5.  Deferred Vested Benefit .............................................. 26

5.6.  Maximum Benefit. ..................................................... 26

ARTICLE 6 FORM OF PAYMENT ................................................. 28

6.1.  Qualified Joint and Survivor Annuity. .............................. 28

6.2.  Optional Benefit Forms .............................................. 30

6.3.  Compliance with Code section 401(a)(9). ......................... 31

ARTICLE 7 DEATH BENEFITS .................................................... 32

7.1.  Qualified Preretirement Survivor Annuity........................... 32

7.2.  Incidental Death Benefit Eliminated. ............................... 34

ARTICLE 8 PLAN ADMINISTRATION COMMITTEE ............................. 34

8.1.  Plan Sponsor Responsibility ........................................ 34

**Page**

8.2.    Committee Membership ................................................................ 34

8.3.    Committee Operations ................................................................ 35

8.4.    Committee Responsibilities ........................................................ 35

8.5.    Sponsoring Employers to Provide Information to
        Committee ............................................................................ 36

8.6.    Committee Expenses ................................................................. 36

ARTICLE 9 CLAIMS CONCERNING BENEFITS ...................................... 36

9.1.    Determination of Benefits .......................................................... 36

9.2.    Denial of Claims ...................................................................... 36

9.3.    Review Procedure .................................................................... 37

9.4.    Determinations Upon Review ..................................................... 37

9.5.    Maintenance of Records ............................................................ 37

ARTICLE 10 MISCELLANEOUS PROVISIONS ........................................ 37

10.1.   Rights Reserved by Sponsoring Employer ................................... 37

10.2.   Nonassignability of Interest ....................................................... 38

10.3.   Legal Effect of Payment by Trustee ............................................ 38

10.4.   Agreement to Comply ............................................................... 38

10.5.   Partial Invalidity or Unenforceability .......................................... 38

10.6.   Limitation of Liability ............................................................... 38

10.7.   Exclusive Benefit of Employees and Their
        Beneficiaries ........................................................................... 39

10.8.   Headings of Sections ................................................................ 39

10.9.   Governing Law ........................................................................ 39

10.10.  Binding Force .......................................................................... 39

vi



Page

10.11. Construction ................................................................. 39

10.12. EGTRRA Model Amendments ............................................. 39

ARTICLE 11 AMENDMENTS TO THE PLAN ........................................ 40

   11.1. Reservation of Right to Amend Plan ..................................... 40

   11.2. Restrictions on Amendments ............................................. 40

ARTICLE 12 PLAN TERMINATION OR MERGER OR CONSOLIDATION ............ 40

   12.1. Plan Termination ......................................................... 40

   12.2. Plan Merger or Consolidation ............................................ 40

ARTICLE 13 TOP-HEAVY PROVISIONS ............................................. 41

   13.1. Application ............................................................... 41

   13.2. Top-Heavy Vesting ....................................................... 41

   13.3. Minimum Benefits ....................................................... 42

   13.4. Top-Heavy Determination ................................................ 42

   13.5. Aggregation .............................................................. 43

ARTICLE 14 THE TRUST AND THE TRUSTEE ...................................... 43

   14.1. The Trust ................................................................. 43

   14.2. Responsibility for Management and Control of Assets .......... 44

   14.3. General Powers of Trustee ................................................ 44

   14.4. Payments From and Charges to Trust ..................................... 45

   14.5. Duties of the Trustee ..................................................... 45

   14.6. Immunities of Trustee .................................................... 46

   14.7. Removal .................................................................. 46

   14.8. Successor Trustee ........................................................ 46

**Page**

14.9.   Vesting of Property in New Trustee ........................................ 46

14.10. Final Settlement of Trustee's Account ................................... 46

14.11. Merger of Trustee ............................................................... 47

14.12. Right to Judicial Accounting ................................................. 47

14.13. Limitation of Liability of Trustee .......................................... 47

14.14. Appointment of an Investment Manager ............................... 47

ARTICLE 15 SPECIAL EARLY RETIREMENT PROGRAM PROVISIONS ............. 48

15.1.   Eligibility ......................................................................... 48

15.2.   Calculation of Benefits ........................................................ 48

# ULLICO INC. PENSION PLAN AND TRUST

## AS AMENDED AND RESTATED EFFECTIVE AS OF FEBRUARY 28, 2002

### ARTICLE 1

### PURPOSE

This ULLICO Inc. Pension Plan and Trust (hereinafter referred to as the "Plan") was adopted by the Plan Sponsor to provide retirement benefits for Employees of Sponsoring Employer ULLICO Group and Zenith Central. The Plan was originally effective December 31, 1994. It replaced the Retirement Plan of the Union Labor Life Insurance Company and the Zenith Administrators, Inc. Central Region Pension Plan. The ULLICO Inc. Pension Trust, which is set forth in Article 14 hereof, forms an integral part of this Plan.

The Plan and Trust are intended to meet the requirements of sections 401(a) and 501(a) of the Internal Revenue Code of 1986, as amended.

The provisions of this Plan shall apply only to an Employee who terminates service with the Employer on or after the Effective Date. The rights and benefits, if any, of any other Employee shall be determined pursuant to the provisions of the Plan, if any, applicable to such Employee on the date his or her Service terminated. Notwithstanding any other provision of this Plan, however, the amendments to the Plan reflected herein that are necessary to comply with changes in applicable law shall relate back to the Plan prior to the Effective Date as of the applicable effective date of such provisions.

The Plan is further amended and restated effective as of February 28, 2002, except as otherwise set forth herein.

### ARTICLE 2

### DEFINITIONS

The following words and phrases, when used with the initial capital letter throughout the Plan, shall have the meaning set forth below, unless a different meaning is plainly required by the context.

2.1.    "Accrued Benefit" means, as of any date, a single life annuity benefit commencing at Normal Retirement Date, computed in accordance with Section 5.1, based on a Participant's Years of Benefit Service, Average Salary, Final Average Pay,



Final Three-Year Average Pay, Compensation and Covered Compensation as of that date.

2.2.   "Actuarial Equivalent" means:

(a)   With respect to a Sponsoring Employer ULLICO Group Benefit, a benefit having the same value as the benefit that it replaces, as determined by the Actuary, based on 1983 Group Annuity Mortality Table, with annuity values weighted fifty percent male, fifty percent female, and a seven percent (7%) interest rate assumption.

(b)   With respect to a Zenith Central Benefit, a benefit having the same value as the benefit that it replaces, as determined by the Actuary, based on the 1971 Group Annuity Mortality Table, with annuity values weighted fifty percent male, fifty percent female, and an eight percent (8%) interest rate assumption.

2.3.   "Actuary" means the individual actuary or firm of actuaries selected by the Plan Sponsor to provide actuarial services in connection with administration of the Plan.

2.4.   "Annuity Starting Date" means the first (1st) day of the first period for which a Pension payment is made hereunder.

2.5.   "Applicable Mortality Table" means, effective as of January 1, 1995, the mortality table described in Rev. Rul. 95-6, 1995-1 C.B. 80. Effective with respect to distributions with annuity starting dates on and after December 31, 2002, and notwithstanding any other Plan provisions to the contrary, the "Applicable Mortality Table," which is used for purposes of adjusting any benefit or limitation under Code section 415(b)(2)(B), (C) or (D), as set forth in Section 5.6 hereof, is the table prescribed in Rev. Rul. 2001-62.

2.6.   "Authorized Leave of Absence" means any absence authorized by the Sponsoring Employer under the Sponsoring Employer's standard personnel practices, including that given for maternity or paternity reasons, as set forth in Section 2.36(a)(4), provided that all persons under similar circumstances must be treated alike in the granting of such Authorized Leaves of Absence, and provided further that the Participant returns within the period specified for the Authorized Leave of Absence.

2.7.   "Average Salary" means the highest average basic monthly Sponsoring Employer ULLICO Group Compensation of an Employee during the thirty-six (36) full, consecutive calendar months of Sponsoring Employer ULLICO Group Service, during the last 120 months preceding the date such Employee ceases to be a Sponsoring Employer ULLICO Group Employee or such other date as noted in Section 5.1. In the event that an Employee has less than thirty-six (36) full, consecutive calendar months of Sponsoring Employer ULLICO Group Service, "Average Salary" means, with respect to such Employee, the average basic monthly Sponsoring Employer ULLICO Group Compensation of such Employee during the period of his Sponsoring Employer ULLICO

- 2 -

Group Service. In no event, however, shall Average Salary be less than the Average Salary that would have been used to calculate a retirement benefit payable on a Participant's Early Retirement Date.

2.8. "Beneficiary" means any individual, trust or other recipient named by a Participant or otherwise under the Plan to receive benefits payable hereunder upon the death of the Participant.

2.9. "Board" or "Board of Directors" means, except where otherwise provided herein, the members of the Board of Directors of the Plan Sponsor.

2.10. "Break in Service" means any Plan Year during which a Participant completes five hundred (500) Hours of Service or less. To the extent required by and in accordance with applicable law and regulations, an Authorized Leave of Absence due to service in the Armed Forces of the United States shall not constitute a Break in Service, and shall be credited as Years of Service and Years of Benefit Service during any years of absence due to the Employee's engagement in the military service.

2.11. "Code" means the Internal Revenue Code of 1986, as amended.

2.12. "Commencement of Employment Date" means the date on which an Employee first performs one (1) Hour of Service for a Sponsoring Employer.

2.13. "Committee" means the Employee Benefit Plans Administrative Committee appointed by the Plan Sponsor pursuant to the provisions of Article 8 to administer the Plan.

2.14. "Compensation" means the following:

(a)     Except as described in (b) below, Sponsoring Employer ULLICO Group Compensation or Zenith Central Compensation.

(b)     For purposes of the limitations of Section 5.6 and the Top-Heavy rules of Article 13, "Compensation" for a Plan Year shall be defined as an Employee's earned income, wages, salaries, fees for professional services and other amounts received for personal services actually rendered in the course of Service (including service as a Leased Employee) with the Employer (including, but not limited to, commissions paid to salesmen, compensation for commissions on insurance premiums, tips and bonuses), actually paid or includible in gross income during such Plan Year, and

(1)     for Plan Years beginning after 1997, increased by the amount of salary reduction contributions under a Code section 125 cafeteria plan, a qualified Code section 401(k) plan, a Code section 408(k) simplified employee pension plan, a Code section 132(f) qualified transportation fringe benefit plan, a Code section 403(b) annuity or mutual fund custodial account, and/or a Code section 457 plan.

(2)     excluding the following:

- 3 -



(A)    contributions of the Employer:

(i)    to a plan of deferred compensation that are not included in the Employee's gross income for the taxable year in which contributed (other than those described in (1) above);

(ii)    under a simplified employee pension plan, to the extent such contributions are deductible by the Employee; and

(iii)    (whether or not under a salary reduction agreement) towards the purchase of an annuity described in Code section 403(b) (whether or not the amounts are actually excludable from the gross income of the Employee);

(B)    distributions from a plan of deferred compensation;

(C)    amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;



(D)    amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(E)    other amounts that received special tax benefits.

(c)    For computations as of Plan Years after 1988, and before, in the case of a Sponsoring Employer ULLICO Group Benefit, 1996, and in the case of a Zenith Central Benefit, 1997, notwithstanding the foregoing provisions of this Section 2.15, the maximum amount of Compensation taken into account for any Plan Year, including a maximum amount of Compensation taken into account for any Plan Year prior to 1989, for purposes of (a) above shall not exceed the limit set forth in Code section 401(a)(17) for such Plan Year. For purposes of determining benefit accruals for a Plan Year beginning after 2001, the maximum amount of Compensation for any prior Plan Year shall be $200,000.

2.15.    "Continuous Service" means the years and fractions of years of an employee's period(s) of employment by an Employer, measured from the Commencement of Employment Date to the date of termination of employment. However, if an Employee who has terminated employment resumes employment with an Employer prior to having a Break in Service, such termination of employment shall be disregarded.

2.16.    "Covered Compensation" means the average of the Social Security Taxable Wage Bases for the thirty-five (35) year period ending with the last day of the year in which the Participant attains Social Security Retirement Age. In determining a Participant's Covered Compensation for a Plan Year, the Social Security Taxable Wage Base for the current Plan Year and any subsequent Plan Year shall be assumed to be the same as the Social Security Taxable Wage Base in effect as of the beginning of the Plan Year for which the determination is being made. An Employee's Covered Compensation

- 4 -

for any Plan Year after the thirty-five (35) year period mentioned above is his or her Covered Compensation for the Plan Year during which such Participant attained Social Security Retirement Age. A Participant's Covered Compensation for any Plan Year before the beginning of this thirty-five (35) year period is the Social Security Taxable Wage Base in effect as of the first day of such Plan Year.

2.17.   "Deferred Retirement Date" means the first day of the calendar month next following the day a Participant elects to take deferred retirement.

2.18.   "Deferred Vested Retirement Date" means the date as of which a Deferred Vested Pension commences, in accordance with Section 4.5(b).

2.19.   "Determination Date" means, for any Plan Year, December 31 of the preceding Plan Year.

2.20.   "Disability" means a physical or mental condition that prevents a Participant from engaging in any substantial gainful activity for a period of long or indefinite duration. A determination of Disability shall be made solely by the Plan Administrator in its reasonable discretion with the advice of competent medical authorities. The decision of the Plan Administrator will be final. All Participants in similar circumstances shall be treated uniformly and in a nondiscriminatory manner.

2.21.   "Disability Retirement Date" means the first (1st) day of the calendar month following the month during which the Participant elects to take a Disability Retirement Pension.

2.22.   "Earliest Retirement Date" means the earliest date on which the Participant could elect to begin to receive retirement benefits hereunder.

2.23.   "Early Retirement Date" means the first day of the calendar month next following the day a Participant elects to take Early Retirement.

2.24.   "Effective Date" means February 28, 2002.

2.25.   "Employee" means an individual who is described in (a) below:

     (a)   In General.

     An individual who is:

       (1)   in the Employment of the Employer; or

       (2)   solely for purposes of participation and vesting, a Leased Employee.

     (b)   Special Rules.

- 5 -

(1)    "Employee" does not include a nonresident alien who receives no earned income from the Employer that constitutes income from sources within the United States.

(2)    For all purposes of this Plan, effective as of his Commencement of Employment Date, for the period during which the following are employees, all of their Service shall be deemed to be Service for the Sponsoring Employer ULLICO Group and they shall be treated as Employees only of the Sponsoring Employer ULLICO Group: Gary L. Eng, so long as he is Senior Vice President, General Manager, Zenith Central; Jerome P. Pollock, so long as he is Executive Vice President, Zenith Central; William M. Dunlap, during his Employment prior to 1995; Richard Reese, Sr., during his Employment prior to 1995; and Richard A. Rezek, during his Employment prior to 1995.

2.26.   "Employer" means the Plan Sponsor and any Related Employers.

A "Related Employer" means any corporation, association, company or entity that is not the Sponsoring Employer, but that is, along with the Sponsoring Employer, a member of:

(a)    a controlled group of corporations (as defined in Code section 414(b));

(b)    a group of trades or businesses (whether or not incorporated) that are under common control (as defined in Code section 414(c)); or

(c)    an affiliated service group (as defined in Code section 414(m)).

"Related Employer" also means any other entity that is required to be aggregated with an Employer pursuant to Treasury regulations under Code section 414(o).

2.27.   "Employment" means employment with a Sponsoring Employer.

2.28.   "Entry Date" means:

(a)    In the case of eligibility to accrue a Zenith Central Benefit, the January 1 or July 1 coincident with or next following the date on which the Employee satisfies the participation requirements of Section 3.2(a);

(b)    In the case of eligibility to accrue a Sponsoring Employer ULLICO Group Benefit, the first (1st) of the month coincident with or next following the date on which the Employee satisfies the participation requirements of Section 3.2(b).

2.29.   "ERISA" means the Employee Retirement Income Security Act of 1974, as amended

2.30.   "Fiduciary" means the Plan Sponsor and the Trustee, or any other person or firm authorized to invest in or manage trust moneys, but only with respect to the

- 6 -



specific responsibilities of each for Plan and Trust administration, all as described in Section 8.1.

2.31.   "Final Average Pay" means one-sixtieth (1/60th) of the Zenith Central Compensation earned during an Employee's highest five consecutive calendar year period within the ten consecutive calendar year period immediately preceding the date he ceases to be a Zenith Central Employee or such other date as noted in Section 5.1. If an Employee has less than five consecutive calendar years of Zenith Central Service, Final Average Pay shall mean the sum of that Employee's Zenith Central Compensation for his period of Zenith Central Service, divided by the number of months of his Zenith Central Service.

2.32.   "Final Three Year Average Pay" means the average of the Employee's Zenith Central Compensation for the three consecutive year period ending with or within the Plan Year in which the Employee ceases to be a Zenith Central Employee or such other date as noted in Section 5.1. In the event the Employee has been in Zenith Central Service for less than three years, his or her entire period of Service shall be used for determining Final Three Year Zenith Central Average Pay. In determining Final Three Year Average Pay, Zenith Central Compensation in excess of Covered Compensation shall be disregarded.

2.33.   "Five Percent Owner" means a five percent (5%) owner, as defined in Code section 416(i)(1)(A)(iii).

2.34.   "Hour of Service" means each hour determined as follows:

(a)     Hours of Service include:

(1)     each hour for which an Employee is paid or entitled to payment for the performance of duties for the Employer, including as a Leased Employee, during the applicable computation period;

(2)     each hour for which an Employee is paid or entitled to payment by the Employer, or as a Leased Employee, on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including Disability), layoff, jury duty or Leave of Absence;

(3)     each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer, or with respect to a Leased Employee;

(4)     solely for purposes of avoiding a Break in Service, up to five hundred one (501) hours of absence from Service with the Employer, including as a Leased Employee, due to:

(A)     the pregnancy of the Participant,

- 7 -



(B)   the birth of a child to the Participant,

(C)   the placement of a child with the Participant in connection with the adoption of such child by the Participant, or

(D)   the care of such child for a period immediately following such birth or placement.

(b)   Special Rules.  Notwithstanding the foregoing provisions of this section:

(1)   not more than five hundred and one (501) Hours of Service shall be credited to an Employee on account of any single continuous period during which the Employee performs no duties, provided, however, that Hours of Service for periods during which the Employee is in military service shall be credited to the extent required under law.  In the case of an absence described in (a)(4) above, such Hours of Service shall be credited in the Plan Year in which the absence begins, if necessary to prevent a Break in Service for that Plan Year or, in all other cases, in the following Plan Year.

(2)   no Hours of Service shall be granted for any period due to amounts an Employee receives or is entitled to receive under a plan maintained solely for the purpose of complying with applicable workers' compensation or disability insurance laws.

(3)   no Hours of Service shall be granted for a payment that solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

(4)   Hours of Service shall be credited to the period for which such payment is made or to which the award or agreement pertains, regardless of when the amounts are paid.

(5)   For an Employee who is paid on other than an hourly basis, Hours of Service shall be credited using the following equivalencies:

| Basis upon Which Participant's Records Are Maintained | Credit Granted to Participant If Participant Earns One (1) or More Hours of Service During Period |
|---|---|
| Shift | Actual hours for full shift |
| Day | 10 Hours of Service |
| Week | 45 Hours of Service |
| Semi-Monthly Payroll | 95 Hours of Service |
| Months of Employment | 190 Hours of Service |



(6)   where an Employee is not compensated for the period of absence, the hours to be credited to the period of absence shall be the number of regularly

- 8 -



scheduled working hours included in such period of time, or, in the absence of a regularly scheduled number of hours, forty (40) hours per week or eight (8) hours per day.

       (c)    Department of Labor Regulation Sections 2530.200b-2(b) and (c) are incorporated herein by reference.

    2.35.  "Key Employee" means, for a Plan Year, a Participant who, at any time during the Plan Year or, for Plan Years beginning before 2002, the four (4) preceding Plan Years, is described as one of the following:

       (a)    an officer of the Employer whose annual Compensation exceeds (1) for Plan Years beginning before 2002, one hundred fifty percent (150%) of the Code section 415(c)(1)(A) dollar limit in effect for any such Plan Year, and (2) for Plan Years beginning after 2001, one hundred thirty thousand ($130,000), as adjusted under Code section 416(i)(1). The number of officers treated as Key Employees for a Plan Year may not exceed the greater of three percent (3%) or ten percent (10%) of the total Employees of the Employer and may, in no event, exceed fifty (50);

       (b)    for Plan Years beginning before 2002, one of the ten (10) Employees of the Employer having annual Compensation from the Employer of more than the Code section 415(c)(1)(A) dollar limitation in effect for that Plan Year and owning directly or indirectly (as defined in the Code section 318 attribution rules), the largest interests in any Employer. If two Employees have the same interest, the one receiving the higher annual Compensation shall be treated as having the largest interest;

       (c)    a Five Percent Owner of the Employer;

       (d)    a one percent (1%) owner of the Employer receiving annual Compensation from the Employer of more than one hundred fifty thousand dollars ($150,000); or

       (e)    Beneficiaries of deceased Employees in the foregoing categories.

For purposes of determining which Employees are one percent (1%) owners and Five Percent Owners under this Section 2.35 only, the term "Employer" shall only include the company or entity with whom the Employee is employed on the Determination Date. Effective as of January 1, 2002, the determination of who is a Key Employee shall be made in accordance with Code Section 416(i)(1) and the applicable regulations and other guidance of general applicability thereunder.

    2.36.  "Leased Employee" means any individual who is not an employee of, but who performs services for, the Employer if: (a) such services are performed pursuant to an agreement between the Employer and any other person; (b) such individual has performed such services for the Employer (or for the Employer and related persons) on a substantially full-time basis for a period of at least one year; and (c) such services are performed under primary direction or control by the Employer. This Section 2.36 is effective as of January 1, 1997.



2.37.   "Normal Retirement Date" means the first (1st) day of the month next following the later of: (a) the date a Participant attains age sixty-five (65); or (b) the fifth (5th) anniversary of the date the Participant commenced Participation in the Plan.

2.38.   "Participant" means an Employee participating in the Plan pursuant to the provisions of Article 3.

2.39.   "PBGC" means the Pension Benefit Guaranty Corporation, a body corporate within the Department of Labor established under the provisions of Title IV of ERISA.

2.40.   "Pension" means a series of monthly amounts that are payable with respect to a Participant's Accrued Benefit under the Plan.

2.41.   "Plan" means the ULLICO Inc. Pension Plan and Trust as set forth herein. This Plan consists of the following two (2) plans and trusts, the terms of both of which are set out in this single document, but each of which remains a separate and distinct legal plan: (1) the ULLICO Inc. Pension Plan and Trust; and (2) the Zenith Administrators, Inc. Central Pension Plan and Trust. The ULLICO Inc. Pension Plan and Trust replaces the Retirement Plan of The Union Labor Life Insurance Company, originally effective January 1, 1962, as amended and restated, effective January 1, 1976. The Zenith Administrators, Inc. Central Pension Plan and Trust replaces the Zenith Administrators, Inc. Central Region Pension Plan, originally effective January 1, 1985, as amended and restated effective October 1, 1992.

2.42.   "Plan Administrator" means the Committee.

2.43.   "Plan Sponsor" means ULLICO Inc.

2.44.   "Plan Year" means the twelve (12) month period commencing on January 1 and ending on December 31.

2.45.   "Postponed Retirement Date," in the case of a Participant who continues Employment beyond his or her Normal Retirement Date, means the first (1st) day of the month following the date such Participant terminates Service.

2.46.   "Predecessor Plan" means the Retirement Plan of the Union Labor Life Insurance Company and the Zenith Administrators, Inc. Central Region Pension Plan.

2.47.   "Qualified Election" means a waiver of a Qualified Joint and Survivor Annuity. Such a waiver must be in writing and must be consented to by the Participant's Spouse, if any. The Spouse's consent to a waiver must be witnessed by a Plan representative or a notary public and must be limited to a benefit for a specific alternate Beneficiary and a specific form of benefit. Notwithstanding this requirement, if a Participant establishes to the satisfaction of a Plan representative that such written consent cannot be obtained because there is no Spouse or because the Spouse cannot be located, no Spousal consent will be required. Any consent hereunder will only be valid with respect to the Spouse who signs the consent or with respect to the designated Spouse



in the case of a Qualified Domestic Relations Order, as defined in Code section 414(p). A Participant may revoke a prior waiver without the consent of the Spouse at any time before the commencement of benefits. The number of revocations shall not be limited. Any new waiver or change of beneficiary will require a new Spousal consent.

2.48. "Qualified Joint and Survivor Annuity" means an annuity for the life of the Participant with a survivor annuity for the life of the Spouse that is fifty percent (50%) or, at the Participant's election, seventy-five percent (75%) or one hundred percent (100%), of the amount of the annuity that is payable during the joint lives of the Participant and the Spouse, and that is the Actuarial Equivalent of the Participant's Retirement Benefit. In the case of an unmarried Participant, a Qualified Joint and Survivor Annuity is an annuity for the life of the Participant.

2.49. "Retirement" means termination of Employment for reasons other than death after a Participant has fulfilled all requirements for a Normal, Early, Postponed or Disability Retirement Pension. Retirement shall be considered as commencing on the day immediately following a Participant's last day of Employment (or Authorized Leave of Absence, if later).

2.50. "Retirement Benefit" means a Normal, Early, Deferred, Deferred Vested or Disability Retirement Benefit hereunder.

2.51. "Section" means a section of the Plan, unless otherwise indicated.

2.52. "SERP" shall mean the Special Early Retirement Program provided by the Plan Sponsor.

2.53. "SERP Election Period" shall mean June 1, 1993 through July 31, 1993.

2.54. "SERP Retiree" shall mean a Participant in the Plan to whom an offer to retire under SERP was extended who (a) met the age and service requirements for participation in SERP, (b) elected during the Election Period to retire under SERP and (c) terminated employment with the Employer on August 1, 1993, or such other date as may be approved by the Plan Administrator.

2.55. "Service" means all regular service rendered to and paid for by the Employer, and Years of Service credited during an Authorized Leave of Absence.

2.56. "Social Security Retirement Age" means the age used as the Retirement Age under Section 216(1) of the Social Security Act, provided, that such section shall be applied:

(a)     without regard to the age increase factor, and

(b)     as if the early retirement age under Section 216(1)(2) of the Social Security Act were sixty-two.

- 11 -



2.57.   "Social Security Taxable Wage Base" means the maximum amount of an Employee's Compensation that is considered wages under section 3121(a) of the Code for the Plan Year.

2.58.   "Sponsoring Employer" means Zenith Administrators, Inc. Central Region or an Employer that is a part of the Sponsoring Employer Ullico Group.

2.59.   "Sponsoring Employer ULLICO Group" means the following Sponsoring Employers collectively:  (1) ULLICO Inc.; (2) The Union Labor Life Insurance Company; (3) Ulico Casualty Company; (4) Union Standard of America Life Insurance company; (5) Ulico Indemnity Company; (6) ULLICO Management Company; (7) MRCo, Inc.; (8) Trust Fund Advisors Inc.; (9) Genpar, Inc.; (10) USACC Property; (11) UNIONCARE, Inc.; and (12) Zenith Administrators, Inc., but only with respect to Employees normally working at the Washington, D.C., Los Angeles, California, Redding, California, or San Francisco, California locations.

2.60.   "Sponsoring Employer ULLICO Group Benefit" means the portion of a Retirement Benefit that is determined under whichever of the following is applicable: Section 5.1(a) (relating to computation of Sponsoring Employer ULLICO Group Normal Retirement Pension) and Section 5.1(c) (relating to limit on combined Pension benefit); Section 5.2 (relating to computation of Deferred Retirement Benefit), to the extent that it refers to Sections 5.1(b) and (c); Section 5.3(a) (relating to computation of Sponsoring Employer ULLICO Group Early Retirement Benefit); or Section 5.5(a) (relating to computation of Sponsoring Employer ULLICO Group Deferred Vested Retirement Pension).

2.61.   "Sponsoring Employer ULLICO Group Compensation" means the total basic regularly-scheduled salary, wages and, effective January 1, 2000, incentive compensation paid to a Sponsoring Employer ULLICO Group Employee by the Sponsoring Employer ULLICO Group for personal services rendered during the Plan Year to the Sponsoring Employer ULLICO Group, excluding bonuses, commissions, overtime, fringe benefits, payments by the Employer under the Plan or any other employee benefit plan, including, without limitation, any group health, life, accident, or other insurance plans, contributions to which are not excludable from the Employee's gross salary or wages. In addition, the Sponsoring Employer ULLICO Group Compensation of an Employee who is a member of the United Food and Commercial Workers Union, AFL-CIO & CLC shall include fifty percent (50%) of any discretionary Group Field Incentive compensation earned during the consecutive thirty-six (36) month period during the one hundred twenty (120) months preceding the date the Employee ceases to be employed by the Sponsoring Employer ULLICO Group during which the Participant's average monthly compensation for Sponsoring Employer ULLICO Group Service was the highest. Notwithstanding the above, Sponsoring Employer ULLICO Group Compensation shall not be reduced by contributions made on behalf of the Employee pursuant to a salary reduction agreement.

2.62.   "Sponsoring Employer ULLICO Group Employee" means an Employee performing Sponsoring Employer ULLICO Group Service.



2.63.   "Sponsoring Employer ULLICO Group Service" means Service for a corporation that is a member of the Sponsoring Employer ULLICO Group.

2.64.   "Sponsoring Employer ULLICO Group Years of Benefit Service"

(a)   <u>Plan Years After 1994.</u>

(1)   <u>In General.</u> A Sponsoring Employer ULLICO Group Year of Benefit Service means, for Plan Years after 1994, twelve (12) Months of Sponsoring Employer ULLICO Group Benefit Service. A Sponsoring Employer ULLICO Group Employee will receive one (1) Month of Sponsoring Employer ULLICO Group Benefit Service for each month of Sponsoring Employer ULLICO Group Service he or she performs during a Plan Year after 1994 during which the Employee has at least one thousand (1,000) Hours of Service. In a Plan Year after 1994 during which the Employee does not have at least one thousand (1,000) Hours of Service, he or she will nevertheless receive one (1) Month of Sponsoring Employer ULLICO Group Benefit Service for each month of Sponsoring Employer ULLICO Group Service in which he or she performs at least eighty-four (84) Hours of Service for the Sponsoring Employer ULLICO Group. An Employee may not receive both Zenith Central Benefit Service and Sponsoring Employer ULLICO Group Benefit Service for the same Plan Year. An Employee who otherwise satisfies the requirements for both during the same Plan Year shall be deemed to have performed Service that Plan Year only for either Zenith Central or the Sponsoring Employer ULLICO Group, whichever would produce the highest additional accrual to such Employee's Normal Retirement Benefit under the Plan.

(2)   <u>Collectively Bargained Employees.</u> Notwithstanding any contrary provision of this Plan, no Sponsoring Employer ULLICO Group Years of Benefit Service or partial Sponsoring Employer ULLICO Group Years of Benefit Service shall be credited to any Employee for any period during which such Employee is a member of a collective bargaining unit represented by a collective bargaining representative with respect to which bargaining unit there is or has been bargaining with respect to retirement benefits, unless an agreement between the Sponsoring Employer ULLICO Group and the collective bargaining representative requires that members of that collective bargaining unit participate in this Plan.

(b)   <u>Plan Years Prior to 1995.</u> A Sponsoring Employer ULLICO Group Year of Benefit Service shall be granted for each Year of Benefit Service prior to 1995 earned under the Union Labor Plan.

2.65.   "Spouse or Surviving Spouse" means a person who is the spouse or surviving spouse of the Participant, provided that a former spouse will be treated as a Spouse or Surviving Spouse to the extent provided under a "qualified domestic relations order" as described in Code section 414(p). To qualify as a Spouse or Surviving Spouse eligible for a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity, the spouse must have been married to the Participant throughout the one (1) year period ending on the earlier of the Participant's date of death or the Participant's Annuity Starting Date. For purposes of the preceding sentence, if a Participant marries



- 13 -



within one (1) year before the Annuity Starting Date and has been married to such spouse for at least one (1) year prior to the Participant's death, then such Participant and spouse shall be treated as married throughout the one (1) year period ending on the Participant's Annuity Starting Date.

2.66.   "Trust" means the trusts set forth in Article 14 hereof, which constitute a part of this Plan.

2.67.   "Trustee" means the Trustee charged with administration of the Trust, which shall be selected by the Plan Sponsor.

2.68.   "Union Labor Plan" means the Retirement Plan of The Union Labor Life Insurance Company, originally effective January 1, 1962, as amended and restated effective January 1, 1976, and as in effect on December 31, 1994.

2.69.   "Valuation Date" means the last day of each Plan Year and each interim date on which valuation of the Plan is made.

2.70.   "Vested" means having a one hundred percent (100%) nonforfeitable interest in an Accrued Benefit. A Participant is zero percent (0%) Vested until one of the following events occurs, at which time the Participant is one hundred percent (100%) Vested:

(a)    The Participant earns five (5) Years of Service.

(b)    The Participant reaches his or her Normal Retirement Date while in Service; or

(c)    There is a termination or partial termination of the Plan.

2.71.   "Year of Benefit Service" means a Zenith Central Year of Benefit Service or a Sponsoring Employer ULLICO Group Year of Benefit Service.

2.72.   "Year of Service"

(a)    In General. "Year of Service" means:

(1)    a Plan Year after 1994 during which the Employee has at least one thousand (1,000) Hours of Service. Only for purposes of determining whether an Employee is vested in his Sponsoring Employer ULLICO Group Benefit, a fractional Year of Service, counting each month of employment as one-twelfth of a year, will be credited for any partial Plan Year in which the Participant does not complete at least 1,000 Hours of Service, but during which the actual Hours of Service completed, increased to their equivalent for a full plan year, would be at least 1,000 Hours of Service;

(2)    a year of vesting service prior to 1995 under a Predecessor Plan.

- 14 -



(b)   <u>Disregard of Prebreak Years of Service</u>. In the case of a Participant who is not Vested, Years of Service prior to a period of five (5) consecutive Breaks in Service shall be disregarded.

2.73.   "Zenith Central" means the Zenith Administrators, Inc. Central Region.

2.74.   "Zenith Central Benefit" means the portion of a Retirement Benefit that is determined under whichever of the following is applicable:  Section 5.1(b) (relating to computation of Zenith Central Normal Retirement Pension) and (c) (relating to combined benefit limit); Section 5.2 (relating to computation of Deferred Retirement Pension), to the extent that it refers to Sections 5.1(b) and (c); Section 5.3(b) (relating to computation of Zenith Central Early Retirement Pension); Section 5.4 (relating to computation of Zenith Central Disability Retirement Pension); or Section 5.5(b) (relating to computation of Zenith Central Deferred Vested Retirement Pension).

2.75.   "Zenith Central Compensation" means the regular weekly base compensation paid to the Employee by Zenith Central for any week during the Plan Year that is the greatest amount of such regular weekly base compensation paid to the Employee by Zenith Central during such Plan Year multiplied by fifty-two (52), plus, effective January 1, 2000, all regularly scheduled incentive compensation paid to the Employee by Zenith Central during such Plan Year.

2.76.   "Zenith Central Employee" means an Employee performing Zenith Central Service.

2.77.   "Zenith Central Plan" means the Zenith Administrators, Inc. Central Region Pension Plan, originally effective January 1, 1985, as amended and restated effective October 1, 1992, as in effect on December 31, 1994.

2.78.   "Zenith Central Service" means Service for Zenith Central.

2.79.   "Zenith Central Year of Benefit Service."

(a)   <u>Plan Years After 1994</u>.

(1)   <u>In General</u>.  A Zenith Central Year of Benefit Service means, for Plan Years after 1994, means a Plan Year after 1994 during which the Employee has at least one thousand (1,000) Hours of Service for Zenith Central. An Employee may not receive both Zenith Central Benefit Service and Sponsoring Employer ULLICO Group Benefit Service during the same Plan Year. An Employee who otherwise satisfies the requirements for both during the same Plan Year shall be deemed to have performed Service during that Plan Year only for Zenith Central or the Sponsoring Employer ULLICO Group, whichever would produce the highest additional accrual in such Employee's Normal Retirement Benefit under the Plan. For purposes of this section, Hours of Service during periods during which the Employee is not eligible to participate in the Plan under Section 3.2(a) with respect to Zenith Central Benefits shall be disregarded.





(2)    Zenith Central Years of Benefit Service During Periods of Disability. A participant who, while a Zenith Central Employee, has incurred a permanent and total Disability, as defined in Section 2.21 will be credited with a Zenith Central Year of Benefit Service for each Plan Year in which he is not otherwise credited with Zenith Central Years of Benefit Service, commencing with the Plan Year in which he incurs the total and permanent disability and ending with the Plan Year in which occurs the earliest of his death, his Normal Retirement Date, recovery from such total and permanent disability, or the date his disability pension actually commences.

(3)    Collectively Bargained Employees. Notwithstanding any contrary provision of this Plan, no Zenith Central Years of Benefit Service or partial Zenith Central Years of Benefit Service shall be credited to any Employee for any period during which such Employee is a member of a collective bargaining unit represented by a collective bargaining representative with respect to which bargaining unit there is or has been bargaining with respect to retirement benefits, unless an agreement between Zenith Central and the collective bargaining representative requires that members of that collective bargaining unit participate in this Plan.

(b)    Plan Years Prior to 1995. A Zenith Central Year of Benefit Service shall be granted for each year of Benefit Service prior to 1995 earned under the Zenith Central Plan. This includes, without limitation, the Zenith Central Years of Benefit Service prior to becoming an Employee that were granted, effective November 1, 1985, for service with Kelly & Associates, as reflected in Appendix A of the Zenith Central Plan, as follows: W. Dunlap -- 5 years; D. Crouch -- 3 months; V. Fenn -- 5 years; L. Monk -- 1 year; C. Wilson -- 5 years; M. Cordts -- 2 years and 10 months; M. Hoadley -- 4 years and 5 months; L. Sandstrom -- 5 years; S. Sahm -- 5 years; G. Arnold -- 5 years; L. Delaune -- 1 year and 6 months; B. McAdam -- 3 years and 10 months; S. Yaeger -- 5 years; P. Best -- 5 years; D. Pappas -- 5 years; J. Robinson -- 2 years and 8 months; D. Worthy -- 2 years and 4 months.

## ARTICLE 3

## PARTICIPATION IN THE PLAN

3.1.    Participation. Any Employee of a Sponsoring Employer who was eligible to participate in the Plan as of February 27, 2002, shall be eligible to participate in this Plan as of February 28, 2002, provided that he is an Employee of a Sponsoring Employer on such date.

3.2.    Participation Requirements. Any other Employee of a Sponsoring Employer shall become a Participant in the Plan as of the Entry Date coincident with or next following:

(a)    With respect to eligibility to accrue a Zenith Central Benefit, the later of the following dates:

- 16 -



(1)     The date he or she attains age 21; or

(2)     The date on which he or she first completes one year of Continuous Service;

(b)     With respect to eligibility to accrue a Sponsoring Employer ULLICO Group Benefit, the day following the date on which the Employee completes three (3) consecutive calendar months of employment with the Employer.

3.3.    Ineligible Employees.

(a)     Notwithstanding any provisio.          to the contrary, an Employee who is a member of a collective bargaining un..          retirement benefits have been the subject of good faith bargaining between emplo)          ..ntatives and the Employer shall not be a Participant in the Plan unless:

(1)     the collective bargaining agreement expressly provides for participation in the Plan; and

(2)     such Employee meets the eligibility requirements under Section 3.2.

(b)     Notwithstanding any provision of the Plan to the contrary, a person who is not currently employed by a Sponsoring Employer shall not be a Participant.

3.4.    Cessation of Employment with Sponsoring Employer.  An Employee who ceases Employment with a Sponsoring Employer shall immediately cease to be a Participant in this Plan.

3.5.    Reemployment with Sponsoring Employer.

(a)     Sponsoring Employer ULLICO Group Benefit.  A former Participant who returns to Employment:

(1)     In the case of an Employee who is vested in his or her Sponsoring Employer ULLICO Group Benefit or who has not incurred a Break in Service, shall resume Participant status with respect to a Sponsoring Employer ULLICO Group Benefit as of the first date on which he or she most recently became an Employee;

(2)     In the case of any other Employee, shall resume Participant status with respect to a Sponsoring Employer ULLICO Group Benefit on the first day following the date on which he or she once again completes three (3) consecutive calendar months of employment with the Employer;



(b)     Zenith Central Benefit.  With respect to a Zenith Central Benefit, a former Participant who returns to Employment:

- 17 -



(1)     In the case of an Employee who has not incurred a Break in Service, shall resume Participant status with respect to a Zenith Central Benefit as of the date he resumes Employment; and

(2)     In the case of an Employer who has incurred a Break in Service, shall resume Participant status with respect to a Zenith Central Benefit as of the most recent date he resumed Employment, if he completes one year of Continuous Service after his most recent Break in Service.

3.6.   Election Not to Participate. A Sponsoring Employer ULLICO Group Employee may, subject to the approval of the Plan Sponsor, voluntarily elect not to participate in the Plan with respect to a Sponsoring Employer ULLICO Group Benefit. Such Employee shall file a written notice of his intent not to participate with the plan sponsor or, after December 31, 1994, with the Committee. The plan sponsor or Committee will acknowledge in writing such Employee's election not to participate.

3.7.   Veterans' Rights.

Effective December 12, 1994, notwithstanding any other provision of the Plan to the contrary, contributions, service credit and benefits shall be provided with respect to qualified military service shall be provided in accordance with Code section 414(u).

## ARTICLE 4

## AVAILABILITY OF RETIREMENT BENEFITS

4.1.   Normal Retirement.

(a)     Eligibility. A Participant shall be eligible for a Normal Retirement Pension, if he or she goes directly from Service to Retirement at his or her Normal Retirement Date.

(b)     Commencement. Payment of a Normal Retirement Pension shall commence as of the first (1st) day of the month next following the Participant's Normal Retirement Date.

4.2.   Postponed Retirement.

(a)     Eligibility. If a Participant remains in Service after his or her Normal Retirement Date, such Participant is eligible to receive a Postponed Retirement Pension.

(b     Commencement. Payments under a Postponed Retirement Pension shall commence as of the Participant's Postponed Retirement Date. No benefits shall be paid under this Section 4.2 prior to a Participant's Postponed Retirement Date unless:

- 18 -



(1)     the Participant is a Five Percent Owner of the Employer with respect to the calendar year in which he attains age seventy and one-half (70-1/2), and he remains employed by the Employer on and after his Required Beginning Date. If such a Participant remains employed by the Employer on and after his Required Beginning Date, he shall commence his Postponed Retirement Pension on his Required Beginning Date. The benefits accrued by the Participant on and after his Required Beginning Date and prior to his termination of Service shall be distributed to him as a separate identifiable component with the first Postponed Retirement Pension payment made in the calendar year immediately following the calendar year in which such benefits accrue.

(2)     effective January 1, 2000, the Participant attains age seventy and one-half (70-1/2) while still employed by the Employer and is not a Five Percent Owner of the Employer with respect to the calendar year in which he attains age seventy and one-half (70-1/2), and such Participant irrevocably elects to commence his Postponed Retirement Pension as of the April 1 of the calendar year following the calendar year in which he attained age seventy and one-half (70-1/2), as if he were a Participant described in (1) above. A Participant described in this Section 4.2(b)(2) shall irrevocably elect, at the time and in the manner prescribed by the Committee, either (i) to commence his Postponed Retirement Pension as of such April 1, or (ii) to defer commencement of his Postponed Retirement Pension until he terminates Service. Effective as of January 1, 2000, if such a Participant elects to defer commencement of his Postponed Retirement Pension until he terminates Service, the Accrued Benefit payable upon his termination of Service shall be Actuarially Equivalent to the Accrued Benefit he would have received had he elected commencement of his Postponed Retirement Pension as of such April 1, plus the Actuarial Equivalent of any additional benefits accrued after that date, reduced by the Actuarial Equivalent of any distribution made with respect to the Participant's retirement benefits after that date.

(3)     Notwithstanding any other provision of the Plan, in no event shall a Participant's Pension commence later than his Required Beginning Date.

(4)     For purposes of this Section 4.2, the term "Required Beginning Date" shall mean the later of the April 1 of the calendar year following the calendar year in which (i) a Participant attains age seventy and one-half (70-1/2), or (ii) in the case of a Participant who is not a Five Percent Owner of the Employer with respect to the calendar year in which he attains age seventy and one-half (70-1/2), the Participant terminates Service.

4.3.    Early Retirement.

(a)     Eligibility. A Participant shall be eligible for an Early Retirement Pension with respect to his Sponsoring Employer ULLICO Group Benefit upon attainment of age fifty-five (55) and completing three (3) or more Years of Service. A Participant shall be eligible for an Early Retirement Pension with respect to his Zenith Central Benefit upon attainment of age fifty-five (55) and completing ten (10) or more Years of Service.



- 19 -



(b)     Commencement. Payment of an Early Retirement Pension shall commence prior to the Participant's Normal Retirement Date and as of the first (1st) day of the month next following the date the Participant submits an election to the Administrator. A Participant is not required to take his or her Sponsoring Employer ULLICO Group Benefit as an Early Retirement Pension to be eligible to take his or her Zenith Central Benefit as an Early Retirement Pension.

4.4.   Disability Retirement.

(a)     Eligibility.

(1)     In General. A Participant who incurs a Disability while in Zenith Central Service shall be eligible for a Disability Retirement Pension, if his or her Zenith Central Service is terminated by reason of Disability after he or she has completed ten (10) or more Years of Service.

(2)     Ineligible Conditions. Notwithstanding any other provision of this Plan, no Participant shall qualify for a Disability Retirement Pension if the Plan Administrator determines that his or her Disability results from:

(A)     a willfully self-inflicted injury or self-induced sickness;

(B)     an injury or disease contracted, suffered or incurred while participating in a criminal enterprise;

(C)     due to chronic alcoholism or addiction to narcotics; or

(D)     service in the Armed Forces of any country.

(3)     Termination of Disability. The Disability Retirement Pension shall cease as of the first (1st) of the month next following the occurrence of any of the events set forth in (A) through (D) below:

(A)     is reemployed by an Employer;

(B)     engages in any substantially gainful activity, except for such employment as is found by the Plan Administrator to be for the primary purpose of rehabilitation or not incompatible with a finding of total and permanent disability;

(C)     has sufficiently recovered, in the opinion of the Plan Administrator, based on a medical examination by a doctor or clinic appointed by the Plan Administrator to be able to engage in regular employment and refuses an offer of employment;



- 20 -

       (D)    refuses to undergo any medical examination requested by the Plan Administrator, provided that a medical examination shall not be required more frequently than twice in any calendar year.

       (4)    <u>Disregard of Disability Benefit Payments</u>. If entitlement to a Disability Retirement Pension ceases pursuant to the provisions of Paragraph (3) above, the Participant shall not be prevented from qualifying for a Pension under another provision of the Plan based, in whole or in part, on his or her Years of Benefit Service and Compensation prior to his or her Disability Retirement Date, and the Disability Retirement Pension payments he or she previously received shall be disregarded in determining the amount of such Pension.

       (b)    <u>Commencement</u>. Payment of a Disability Retirement Pension shall commence as of the first (1st) day of the month next following the Participant's Normal Retirement Date. A Participant may elect, however, to begin receiving his or her Disability Retirement Pension at any time after he or she attains age fifty-five (55). If the Participant makes such an election, payment of his or her Disability Retirement Pension shall commence as of the first day of the month next following the date the Participant submits an election to the Administrator.

4.5.    <u>Deferred Vested Pension</u>.

       (a)    <u>Eligibility</u>. A Participant shall be eligible for a Deferred Vested Pension, if he or she is Vested at the time he or she terminates Service prior to becoming eligible for Early Retirement and prior to Normal Retirement Age.

       (b)    <u>Commencement</u>. Payments under a Deferred Vested Pension shall commence:

       (1)    as of the first (1st) day of any calendar month within the ten (10) year period preceding his or her Normal Retirement Date if the Participant so elects and:

       (A)    with respect to his or her Sponsoring Employer ULLICO Group Benefit, if the Participant has at least fifteen (15) Years of Service and is at least age fifty-five (55);

       (B)    with respect to his or her Zenith Central Benefit, if the Participant has at least ten (10) Years of Service and is at least age fifty-five (55) ; or

       (2)    otherwise, on the first (1st) day of the month following the Participant's Normal Retirement Date.





4.6.   Reemployment After Retirement.

    (a)   Suspension of Pension Payments.

        (1)   Reemployment Prior to Normal Retirement Date. The Pension payments of a Participant who is reemployed by an Employer prior to the Participant's Normal Retirement Date shall be suspended for any month in which such Participant performs an Hour of Service.

        (2)   Reemployment At or After Normal Retirement Date. The Pension payments of a Participant who continues in employment for an Employer or is reemployed by an Employer on or after the Participant's Normal Retirement Date shall be suspended for any month in which the Participant performs forty (40) or more Hours of Service for which he or she is paid or entitled to payment from the Employer ("Employment Month"). Any Pension payments for such month shall not thereafter be payable to such Participant.

    (b)   Review of Suspension. In accordance with the claims procedures set forth in Article 9, a Participant whose Pension payments are suspended in accordance with this section may request recommencement of payments and a determination that:

        (1)   in the case of reemployment prior to the Participant's Normal Retirement Date, the Participant has not performed an Hour of Service; or

        (2)   in the case of reemployment after the Participant's Normal Retirement Date, the Participant has not had an Employment Month.

    (c)   Recommencement of Pension Payments. Pension payments suspended pursuant to paragraph (a) above shall resume no later than the first (1st) day of the third (3rd) calendar month following the last consecutive Employment Month of the Participant. The amount of the resumed payments shall be computed based on the Participant's age, Compensation and Years of Benefit Service as of the date as of which they resume, reduced to take into account the actuarial value of any Pension payments previously received by the Participant. In no event shall the monthly Pension payment to such a Participant be less than the amount of his or her monthly Pension payment was or would have been prior to his or her reemployment. The initial such resumed Pension payment shall include the payment scheduled to occur in the calendar month when payments resume and any amounts withheld between the last Employment Month and the resumption of payments.

    (d)   Offset. The amount of any Pension payments made during any Employment Month shall be deducted from any subsequent Pension payments. However, the maximum offset in any one (1) calendar month (except for the initial Pension payment made upon recommencement of Pension payment which is subject to offset without limitation) shall not exceed twenty-five percent (25%) of that month's payment.



- 22 -



(e)    Notice. Prior to suspension of any Pension payments pursuant to this section, the Plan Administrator will notify the Participant by personal delivery or first class mail during the first (1st) calendar month in which the Plan suspends his or her Pension payments that the Participant's Pension payments have been suspended. Such notification shall contain a description of the specific reasons why Pension payments are being suspended, the specific Employment Months for which they are being suspended, the specific amounts, if any, paid during such Employment Months that will be offset against subsequent Pension payments and the manner in which the Plan intends to offset such amounts. A general description of the Plan provisions relating to suspension of payments, a copy of such provisions, and a statement to the effect that applicable Department of Labor Regulations may be found in Section 2530.203-3 of the Code of Federal Regulations. In addition, the notice shall inform the Participant of the Plan's procedure for affording a review of the suspension of benefits.

4.7.    Independence of Zenith Central and Sponsoring Employer ULLICO Group Benefits. A Participant may begin receiving his or her Zenith Central and Sponsoring Employer ULLICO Benefits independently, at different times and in different forms, or at the same time in the same form, provided that he or she has satisfied all applicable requirements for the form(s) and timing(s) selected.



## ARTICLE 5

## AMOUNT OF RETIREMENT BENEFIT

5.1.    Normal Retirement Benefit. The monthly amount of a Participant's Normal Retirement Benefit shall be the sum of (a) and (b) below:

(a)    Sponsoring Employer ULLICO Group Benefit. The amount described in this Subsection (a) is the sum of (1), (2), and (3) below:

(1)    the Participant's Sponsoring Employer ULLICO Group Years of Benefit Service for Plan Years before 1989 multiplied by two percent (2%) of such Participant's Average Salary as of the one of the following dates on which it is the greatest:

(A)    December 31, 1988;

(B)    December 31, 1995; or

(C)    the date of the Participant's Retirement;

(2)    the Participant's Sponsoring Employer ULLICO Group Years of Benefit Service after 1988 and before 1996, multiplied by two percent (2%) of such Participant's Average Salary, as of the one of the following dates on which it is the greatest:

- 23 -



(A)    December 31, 1995; or

(B)    the date of the Participant's Retirement; and

(3)    the Participant's Sponsoring Employer ULLICO Group Years of Benefit Service for Plan Years after 1995, multiplied by two percent (2%) of such Participant's Average Salary.

(4)    Sponsoring Employer ULLICO Group Years of Benefit Service after the first (1st) forty (40) shall be disregarded for purposes of (1) through (3) above.

(5)    Effective with respect to any Participant who retires on or after January 1, 2002, the percentage of such Participant's Average Salary used to determine his Normal Retirement Benefit in (1), (2) and (3) above shall increase from two percent (2%) to two and one-half percent (2-1/2%) for all Sponsoring Employer ULLICO Group Years of Benefit Service. This Section 5.1(a)(5) shall not apply to any Participant who is covered by the collective bargaining agreement between The Union Labor Life Insurance Company and OPEIU Local 153.

(b)    <u>Zenith Central Benefit</u>. The amount described in this Subsection (b) is an amount equal to (1) reduced by (2):



(1)    the sum of (A), (B) and (C) below:

(A)    the Participant's Zenith Central Years of Benefit Service for Plan Years prior to 1989, multiplied by one and seventy-five one hundredths percent (1.75%) of the Participant's Final Average Pay as of the one of the following dates on which it is the greatest:

(i)    December 31, 1988;

(ii)    December 31, 1996; or

(iii)    the date of the Participant's Retirement.

(B)    The Participant's Zenith Central Years of Benefit Service for Plan Years after 1988 and before 1997, multiplied by one and seventy-five one hundredths of a percent (1.75%) of the Participant's Final Average Pay as of the one of the following dates on which it is the greatest:

(i)    December 31, 1996; or

(ii)    the date of the Participant's Retirement.

(C)    The Participant's Zenith Central Years of Benefit Service for Plan Years after 1996 multiplied by one and seventy-five one hundredths of a percent (1.75%) of the Participant's Final Average Pay.

- 24 -



(2)     The number of the Participant's Zenith Central Years of Benefit Service, multiplied by half a percent (.5%) of the Participant's Final Three Year Average Pay.

(3)     Zenith Central Years of Benefit Service after the first (1st) thirty (30) shall be disregarded for purposes of (1) and (2) above.

(c)     Limit on Combined Years of Benefit Service. A Participant's combined Sponsoring Employer ULLICO Group Years of Benefit Service and Zenith Central Years of Benefit Service taken into account under (a) and (b) above shall not exceed forty (40). Any reduction required under the preceding sentence shall be made in the manner most favorable to the Participant.

5.2.   Deferred Retirement Benefit. The monthly amount of a Participant's Deferred Retirement Benefit shall be an amount determined under the formula set forth in Section 5.1, as of the Participant's Deferred Retirement Date. In no event, however, shall such amount be less than the Actuarial Equivalent of the Normal Retirement Benefit the Participant would have received if he or she had taken Retirement at his or her Normal Retirement Date. Any additional Deferred Retirement Benefit accruing to the Participant after the Plan Year in which he or she attains age seventy and one-half (70-1/2) shall be distributed as a separate, additional component of the Participant's Deferred Retirement Benefit, beginning with the first month in the calendar year immediately following the calendar year in which such amount accrues.



5.3.   Early Retirement Benefit. The monthly amount of a Participant's Early Retirement Benefit shall be equal to the sum of (a) and (b) below:

(a)     Sponsoring Employer ULLICO Group Benefit. The amount described in this Subsection (a) is equal to the amount of the Sponsoring Employer ULLICO Group Benefit described in Sections 5.1(a) and (c), reduced by three-tenths of one percent (.3%) for each month calculated to the nearest month, between the Participant's Early Retirement Date and Normal Retirement Date. Notwithstanding the preceding sentence:

(1)     effective for Plan Years beginning after 1994, in the case of a Participant who is eligible for an Early Retirement Pension and could attain age sixty (60) and earn forty (40) Sponsoring Employer ULLICO Group Years of Benefit Service prior to his or her Normal Retirement Date, such reduction shall be made only for the months between the Participant's Early Retirement Date and the date the Participant would attain age sixty (60) and earn forty (40) Sponsoring Employer ULLICO Group Years of Benefit Service; and

(2)     effective for Plan Years beginning after 2001, in the case of any Participant who has attained age sixty-two (62) and has earned fifteen (15) Sponsoring Employer ULLICO Group Years of Benefit Service, such Participant's Early Retirement Benefit shall equal the amount of the Sponsoring Employer ULLICO Group Benefit described in Sections 5.1(a) and (c) with no reduction for early commencement. This Section 5.3(a)(3) shall not apply to any Sponsoring Employer



ULLICO Group Participant who is covered by the collective bargaining agreement between The Union Labor Life Insurance Company and OPEIU Local 153.

(b)   Zenith Central Benefit. The amount described in this Subsection (b) is the amount of the Zenith Central Benefit described in Sections 5.1(b) and (c) above, reduced by one-half of one percent (.5%) for each full month between the Participant's Early Retirement Date and the first (1st) day of the month next following the date the Participant would attain age sixty-two (62).

5.4.   Zenith Central Disability Retirement Benefit. The monthly amount of a Participant's Disability Retirement Benefit shall be the amount of the Zenith Central Benefit described in Section 5.1(b) above, reduced by one-half of one percent (.5%) for each full month by which the Participant's Disability Retirement Date precedes his or her Normal Retirement Date.

5.5.   Deferred Vested Benefit. The monthly amount of a Participant's Deferred Vested Benefit shall be equal to the sum of (a) and (b) below;

(a)   Sponsoring Employer ULLICO Group Benefit. The amount described in this Subsection (a) is the amount of the Sponsoring Employer ULLICO Group Benefit described in Sections 5.1(a) and (c) above, reduced by three-tenths of one percent (.3%) for each month calculated to the nearest month, by which the Participant's Deferred Vested Retirement Date precedes his or her Normal Retirement Date. However, in the case of a Participant who has earned forty (40) Sponsoring Employer ULLICO Group Years of Benefit Service and obtained age sixty (60) prior to his or her Deferred Vested Retirement date, such reduction shall be made only for months between the Participant's Early Retirement Date and the date the Participant attains age sixty (60).

(b)   Zenith Central Benefit. The amount described in this Subsection (b) is the amount of the Zenith Central Benefit described in Sections 5.1(b) and (c) above, reduced by one-half of one percent (.5%) for each full month by which the Participant's Deferred Vested Retirement Date precedes the first (1st) day of the month next following the date the Participant would attain age sixty-two (62).

5.6.   Maximum Benefit.

(a)   The maximum annual benefit payable to any Participant in the form of a straight life annuity starting at his or her Normal Retirement Date shall not exceed the lesser of:

(1)   ninety thousand dollars ($90,000) for Plan Years beginning before 2002, or one hundred sixty thousand dollars ($160,000) for Plan Years beginning after 2001, as adjusted by the Secretary of the Treasury in accordance with Code section 415(d); or

(2)   one hundred percent (100%) of the Participant's average Compensation for the three (3) consecutive Plan Years in which the Participant's Compensation was the highest.

- 26 -

(b)      If a Participant has less than ten (10) years of participation, the limit set forth in (a)(1) above shall be reduced by multiplying such limit by a fraction, the numerator of which is the Participant's total years of participation (not less than one), and the denominator of which is ten (10). To the extent provided by the Secretary of Treasury, the preceding sentence shall be applied separately with respect to each change in the benefit structure of the Plan. If a Participant has less than ten (10) Years of Service, the limit set forth in (a)(2) above shall be reduced by multiplying such limit by a fraction, the numerator of which is the Participant's total Years of Service (not less than one (1)) and the denominator of which is ten (10).

(c)      A benefit payable in a form other than a straight life annuity on the Participant's life shall be tested for compliance with the limits set forth in this section by adjusting such benefit to the greater of (i) the actuarial equivalent of a straight life annuity computed using an interest assumption of seven percent (7%), in the case of an Employee having only a Sponsoring Employer ULLICO Group Benefit, or eight percent (8%), in the case of an Employee having a Zenith Central Benefit and the mortality table specified in the Plan, or (ii) for Plan Years beginning after 1994, the actuarial equivalent of a straight life annuity computed using an interest rate of 5% and the Applicable Mortality Table. For this purpose, ancillary benefits not directly related to retirement income will be ignored, as will that portion of any joint and survivor annuity that constitutes a Qualified Joint and Survivor Annuity and benefits transferred or rolled over from plans of employers that are not Employers.

(d)      If a Participant's benefit commences prior to 2002 and prior to attaining Social Security Retirement Age, but on or after attaining age sixty-two (62), the limitation set forth in (a)(1) above shall be reduced, in accordance with Treasury regulations, to an amount, commencing on the date the Participant's benefit commences, that is the actuarial equivalent of such limitation commencing at the Social Security Retirement Age. The interest assumption used for this purpose shall be seven percent (7%), in the case of an Employee having only a Sponsoring Employer ULLICO Group Benefit, or eight percent (8%), in the case of an Employee having a Zenith Central Benefit.

(e)      If a Participant's benefit commences prior to attaining age sixty-two (62), the limitation set forth in (a)(1) above shall be reduced to the lesser of: (i) the actuarial equivalent (at such age) of the dollar limitation set forth in (a)(1) above at age sixty-two (62) (as reduced pursuant to (d) above for Plan Years before 2002; with no such reduction for Plan Years after 2001) computed using an interest assumption of seven percent (7%), in the case of an Employee having only a Sponsoring Employer ULLICO Group Benefit, or eight percent (8%), in the case of an Employee having a Zenith Central Benefit and the mortality table specified in the Plan, or (ii) for Plan Years beginning after 1994, the actuarial equivalent of the dollar limitation set forth in (a)(1) above at age sixty-two (62) (as reduced pursuant to (d) above for Plan Years before 2002; with no such reduction for Plan Years after 2001) computed using an interest assumption of five percent (5%) and the Applicable Mortality Table. Any decrease in the limitation in (a)(1) above determined in accordance with this paragraph (e) shall not reflect a mortality

decrement if benefits are not forfeited upon the death of the Participant. If any benefits are forfeited upon death, the full mortality decrement shall be taken into account.

(f)    If a Participant's benefit commences (i) before 2002 and after attaining Social Security Retirement Age, or (ii) after 2001 and after attaining age sixty-five (65), the limitation set forth in (a)(1) above shall be increased to the actuarial equivalent of such limitation commencing at Social Security Retirement Age or age sixty-five (65), as the case may be. The actuarial equivalent of the dollar limitation set forth in (a)(1) above commencing at Social Security Retirement Age or age sixty-five (65), as the case may be, shall be the lesser of (i) the actuarial equivalent (at such age) of such limitation computed using an interest rate of five percent (5%) and the mortality table specified in the Plan, or (ii) for Plan Years beginning after 1994, the actuarial equivalent (at such age) of such limitation computed using an interest rate of five percent (5%) and the Applicable Mortality Table. For this purpose, mortality between age sixty five (65) and the age at which benefits commence shall be ignored.

(g)    For purposes of this limitation, all defined benefit plans of the Employer, whether or not terminated, are to be treated as one defined benefit plan.

(h)    Notwithstanding any other provision of this section, a Participant's Accrued Benefit shall not be reduced to less than the amount of such Participant's Accrued Benefit as of December 31, 1986.

(i)    Benefit increases resulting from the increase in the limitation of Code section 415(b) for Plan Years beginning after 2001 shall be provided to each Participant (with benefits limited by Code section 415(b)) who has an accrued benefit under the Plan immediately prior to January 1, 2002 (other than an accrued benefit resulting from a benefit increase solely as a result of the increase in limitations under Code section 415(b)).

(j)    The above limitations are intended to comply with the provisions of Code section 415. If there is any discrepancy between the provisions of this section and Code section 415 and the Treasury regulations thereunder, such discrepancy shall be resolved in such a manner as to give full effect to the provisions of Code section 415.

(k)    The elimination of the Plan's provisions relating to the combined limit of Code section 415(e) is effective as of January 1, 2000.

## ARTICLE 6

## FORM OF PAYMENT

6.1.    Qualified Joint and Survivor Annuity.

(a)    Presumptive Form. Unless an optional form of benefit available under Section 6.2 is selected pursuant to a Qualified Election within the ninety (90) day

- 28 -



period ending on the Annuity Starting Date, a Participant's Vested Accrued Benefit shall be paid in the form of a Qualified Joint and Survivor Annuity.

(b)     Notice Requirements. The Plan Administrator shall provide each Participant, not less than thirty (30) days and not more than ninety (90) days prior to the Annuity Starting Date with a written explanation of:

(1)     the terms and conditions of a Qualified Joint and Survivor Annuity;

(2)     the Participant's right to make and the effect of an election to waive the Qualified Joint and Survivor Annuity form of benefit;

(3)     the rights of a Participant's Spouse; and

(4)     the right to revoke, and the effect of a revocation of, a previous election to waive the Qualified Joint and Survivor Annuity.

(c)     Spouse Benefit. In the case of a Surviving Spouse with respect to whom the requirements of Paragraph (1) below are satisfied, the adjustments set forth in Paragraph (2) below shall apply:

(1)     The requirements of this paragraph are satisfied if the requirements of Subparagraph (A) or Subparagraph (B) below are satisfied:

(A)     The requirements of this subparagraph are satisfied if the Participant

(i)     took an Early Retirement Benefit after completing at least thirty (30) Sponsoring Employer ULLICO Group Years of Benefit Service or took a Normal or Deferred Retirement Benefit;

(ii)     was in the employ of the Sponsoring Employer ULLICO Group within thirty (30) days before the date such Retirement Benefit commenced; and

(iii)     was married to the Surviving Spouse for at least five (5) years prior to retirement.

(B)     The requirements of this subparagraph are satisfied if the Participant:

(i)     took a Normal Retirement Benefit after a period of Disability;

(ii)     was in the employ of the Sponsoring Employer ULLICO Group at the time of incurring a Disability; and

- 29 -

(iii)    was married to the Surviving Spouse for at least five (5) years prior to the date of incurring a Disability.

(2)    The adjustments applicable under this paragraph (2) are as follows:

(A)    The Survivor Annuity payable under Section 6.1(a) with respect to the portion of the Participant's Retirement Benefit that is attributable to Sponsoring Employer ULLICO Group Years of Benefit Service shall be fully subsidized. No reduction shall be made to the Participant's Early, Normal or Deferred Retirement Benefit to pay for it;

(B)    The payment to any Surviving Spouse under this Section 6.1 for any month after such Surviving Spouse remarries shall be reduced to the amount that would have been payable to such Surviving Spouse for such month under this Section 6.1 if this Subsection 6.1(c) had never applied.

6.2.    Optional Benefit Forms. Instead of a Qualified Joint and Survivor Annuity under Section 6.1(a), a Participant who makes a Qualified Election may receive his or her Retirement Benefit in one of the following forms, which shall be its Actuarial Equivalent:

(a)    Single Life Annuity. A single life annuity for the life of the Participant.

(b)    Joint and Survivor Annuity with Nonspouse Beneficiary. A fifty percent (50%), seventy-five percent (75%) or one hundred percent (100%) joint and survivor annuity for the lives of the Participant and a nonspouse Beneficiary.

(c)    Five, Ten or Fifteen Year Period Certain Zenith Central Benefit. A Retirement Benefit made up of (1) and (2) below:

(1)    The Participant's Zenith Central Benefit in the form of a single life annuity for the life of the Participant with a period certain of the lesser of:

(A)    Five (5), ten (10) or fifteen (15) years, whichever the Participant elects, or

(B)    The Joint Life Expectancy of the Participant and his or her Beneficiary.

If the Participant dies before the end of the period certain, the Beneficiary will receive monthly annuity payments for the remainder of the period certain. Each such payment shall be in the same amount as the amount of each of the monthly annuity payments the Participant was receiving for periods prior to his death.

(2)    The Participant's Sponsoring Employer ULLICO GROUP Benefit in a form described in Section 6.1(a) (relating to a Qualified Joint and Survivor

- 30 -



Annuity), Section 6.2(a) (relating to a single life annuity) or 6.2(b) (relating to a joint and survivor annuity with a nonspouse Beneficiary).

      (d)    <u>Predecessor Plan Forms</u>. Any form provided under the terms of the Predecessor Plans as of December 31, 1994; provided, however, that, in no event, shall the amount or value of the Participant's entire benefit paid pursuant to this election and under this Plan be greater than the actuarial equivalent, as defined under such Predecessor Plans, of the Participant's accrued benefit under such Predecessor Plans as of December 31, 1994.

      6.3.    <u>Compliance with Code section 401(a)(9)</u>. Each benefit distribution under the Plan shall be made in accordance with Code section 401(a)(9) and the Treasury Regulations thereunder, including the incidental death provisions thereof. If any provision of the Plan conflicts with the requirements of Code section 401(a)(9) and the Treasury Regulations thereunder, the requirements of Code section 401(a)(9) and the Treasury Regulations thereunder shall supersede any such Plan provision.

## ARTICLE 7

## DEATH BENEFITS

7.1.    Qualified Preretirement Survivor Annuity. If a Vested Participant dies before beginning to receive a Retirement Benefit hereunder, a Qualified Preretirement Survivor Annuity shall be payable to his or her surviving Spouse, if any, as follows:

(a)    Participant Dies On Or After Earliest Retirement Date (1)  If a Vested Participant dies on or after the Earliest Retirement Date, as defined in Section 2.23 or Section 7.1(d), the Participant's Surviving Spouse, if any, shall receive the same benefit that would have been payable if the Participant had retired with an immediate fifty percent (50%) Qualified Joint and Survivor Annuity under Section 6.1(a) and (b), without regard to Section 6.1(c), on the day before the Participant's date of death.

(2)    Notwithstanding (1) above, effective for Plan Years beginning after 2001, the surviving spouse of a Participant, if any, shall receive the same benefit that would have been payable if the Participant had retired with an immediate seventy-five percent (75%) Qualified Joint and Survivor Annuity under Section 6.1(a) and (b) without regard to Section 6.1(c), on the day before the Sponsoring Employer ULLICO Group Participant's date of death. This Section 7.1(a)(2) shall not apply to the Surviving Spouse of a Participant in the Zenith Central Plan.

(b)    Participant Dies Before Earliest Retirement Date. If a Participant dies before the Earliest Retirement Date, the Participant's Surviving Spouse, if any, shall receive the same benefit that would have been payable if the Participant had:

(1)    separated from Service on the date of death;

(2)    survived to the Earliest Retirement Date;

(3)    retired with an immediate fifty percent (50%) Qualified Joint and Survivor Annuity under Section 6.1(a) and (b), without regard to Section 6.1(c), at the Earliest Retirement Date; and

(4)    died on the day after the Earliest Retirement Date.

(c)    Commencement Date. A Surviving Spouse may direct the commencement of Qualified Preretirement Survivor Annuity payments as of:

(1)    the first (1st) of the month next following the later of the Participant's Earliest Retirement Date or the date of the death of the Participant; or

- 32 -

(2)   any first of a month thereafter that is not later than the Participant's Normal Retirement Date.

(d)   <u>Pre-Retirement Death Benefit</u>. In the case of a Participant who dies on or after the first (1st) day of the month next following the date such Participant attains age 55, solely for purposes of this Section 7.1, the Earliest Retirement Date is the first (1st) day of the month in which the Participant dies.

(e)   <u>Spouse Benefit</u>. In the case of a Surviving Spouse with respect to whom the requirements of Paragraph (1) below are satisfied, the adjustments set forth in Paragraph (2) below shall apply:

(1)   The requirements of this paragraph are satisfied if the requirements of Subparagraph (A) or Subparagraph (B) below are satisfied:

(A)   The requirements of this subparagraph are satisfied if the Participant:

(i)   had completed at least ten (10) Sponsoring Employer ULLICO Group Years of Benefit Service;

(ii)   had attained age fifty (50);

(iii)   was in the employ of the Sponsoring Employer ULLICO Group on the day immediately preceding the date of death; and

(iv)   was married to the Surviving Spouse for at least two (2) years prior to death;

(B)   The requirements of this subparagraph are satisfied if the Participant:

(i)   had completed at least five (5) Sponsoring Employer ULLICO Group Years of Benefit Service;

(ii)   was in the employ of the Sponsoring Employer ULLICO Group at the time of incurring a Disability;

(iii)   was married to the Surviving Spouse for at least five (5) years prior to incurring a Disability.

(2)   The adjustments applicable under this Paragraph are as follows:

(A)   The monthly payment of the portion of the Qualified Preretirement Survivor Annuity payable under 7.1(a) or (b), above, that is attributable to Sponsoring Employer ULLICO Group Years of Benefit Service shall be increased, if necessary, to make it equal to fifty percent (50%) of the amount of the

- 33 -

monthly Normal Retirement Benefit or Deferred Retirement Benefit that would have been payable to the Participant as a single life annuity beginning at age sixty-five (65) or the date of his death, whichever is later, based upon the Participant's Average Salary and Sponsoring Employer ULLICO Group Years of Benefit Service as of the date of death;

(B)     The monthly payments of the portion of the Qualified Preretirement Survivor Annuity attributable to Sponsoring Employer ULLICO Group Years of Benefit Service will commence on the first day of the month coincident with or next following the date of death of the Participant; and

(C)     No monthly payment made under this Section 7.1 after the date a Surviving Spouse remarries shall be greater than the amount that would have been payable under this Section 7.1, if any, for such month, if this Subsection 7.1(e) had never applied.

7.2.   <u>Incidental Death Benefit Limitation</u>.  In no event shall the incidental death benefit requirements of Treasury regulation section 1.401(a)(9)-2 be violated.

## ARTICLE 8

## PLAN ADMINISTRATION COMMITTEE

8.1.   <u>Plan Sponsor Responsibility</u>.  The Plan Sponsor shall be responsible for designating and appointing the Committee to serve as Plan Administrator. The Committee shall supervise and control the operation of this Plan pursuant to the terms herein contained and make any rules and regulations for the administration of the Plan that are not inconsistent with the terms and provisions hereof.

8.2.   <u>Committee Membership</u>.  The Plan Administration Committee shall consist of at least three (3) members appointed by the Plan Sponsor. A member of the Plan Administration Committee may resign by delivering written notice of resignation to a member of the Board of the Plan Sponsor. The Plan Sponsor may remove a member of the Committee by delivering a certified copy of its resolution of removal to such person. A resignation or removal shall be effective on the date specified. In the event that a vacancy occurs on the Committee, such vacancy shall be filled by the Plan Sponsor.

The Committee may appoint from their number such subcommittees with such powers as the Committee shall determine, and may authorize one or more of their number, the Chairman, or any agent, to execute and deliver any instrument or make any payment on their behalf, except that a request for funds from, or a direction for the payment or application of funds by, the Trustee, shall be signed by at least one member of the Committee. The Committee may retain such legal counsel and accountants, who may or may not be in the employ of the Employer, actuaries, and such clerical services as it may require in carrying out the provisions of the Plan.

- 34 -

8.3.   Committee Operations. The Committee shall appoint one of its member to serve as Secretary (the "Secretary") of the Committee. The Secretary shall keep a record of the Committee's proceedings and all records and documents pertaining to the Committee's administration of the Plan. Any action of a subcommittee duly authorized by the Committee shall constitute the action of the Committee and be binding in the same manner as if all members of the Committee had joined therein. The Committee shall authorize one of its members to sign for, and on behalf of, the Committee any certificate or other written directions of the Committee. Any third person dealing with the Committee may conclusively rely upon any certificate or any other written direction signed by one or more members of the Committee that purports to have been duly authorized by the Committee. A majority of the members of the Committee shall constitute a quorum thereof.

The Committee shall hold meetings upon such notice, at such time or times, and at such place or places as it may determine.

The Committee may from time to time establish rules for the administration of the Plan. Except as otherwise herein expressly provided, the Committee shall have the exclusive right in its reasonable discretion to interpret the Plan and to decide any matters arising hereunder in the administration or operation of the Plan. It shall endeavor to act by general rules so as to not discriminate in favor of any person.

No member of the Committee shall be remunerated for services performed as a member of the Committee.

8.4.   Committee Responsibilities. The Committee shall be responsible for the implementation and general administration of the Plan and shall have the exclusive right to determine in its sole discretion any questions arising in connection with the interpretation, application or administration of the Plan and its determination shall be conclusive and binding upon any and all Participants and Beneficiaries. In furtherance of such power, the Committee shall have all powers necessary to accomplish such purposes, including, but not limited to, the following:

(a)   to authorize the employer contributions to the Plan and to determine the amounts of such contributions based on appropriate information;

(b)   to determine the amount of benefits and the rights of Participants and Beneficiaries to Plan benefits; to take any actions necessary to assure timely payment of benefits to any Participant or Beneficiary eligible to receive benefits under the Plan; and to assure a full and fair review of any person who is denied a claim to any benefit under the Plan;

(c)   to maintain Plan records, to communicate information to the Participants and their Beneficiaries, and to submit required reports to appropriate government authorities;

(d)   to employ other persons to render advice with regard to any responsibility or authority being carried out by the Committee or assist in the

- 35 -

administration of the Plan, including the employment of counsel or, as necessary, the services of a certified public accountant;

(e)   to make and publish such rules for the regulation of the Plan as are not inconsistent with the terms hereof;

(f)   to take any action necessary or appropriate to assure that the Plan is administered for the exclusive purpose of providing benefits to the Participants and their Beneficiaries under the Plan and defraying reasonable expenses of administering the Plan, subject to the requirements of any applicable law; and

(g)   to operate and administer the Plan in all matters other than those for which the Trustee has been designated.

(h)   to direct Trust investments in accordance with Section 14.13 or appoint an Investment Manager in accordance with Section 14.14.

Except for gross negligence, willful misconduct or willful breach of the provisions of this Plan, neither the Committee nor any person to whom it may delegate authority shall incur any individual liability for any act or failure to act pursuant to this Plan. No member of the Committee shall be liable for the act of any other member.

8.5.   Sponsoring Employers to Provide Information to Committee. To enable the Committee to perform its functions, the Sponsoring Employers shall supply full and timely information to the Committee Chairman on all matters relating to the salary of all Participants, their Employment, retirement, death, or the cause for termination of Employment and such other pertinent facts as the Committee may require.

8.6.   Committee Expenses. The members of the Committee shall be employees, officers or directors of the Plan Sponsor or Employer and shall serve without compensation for their services hereunder. It is intended that all expenses of the Committee shall be paid by the Plan Sponsor and/or Sponsoring Employers and that the Plan Sponsor or Sponsoring Employers shall furnish the Committee with such administrative, professional, clerical and other assistance as is necessary in the performance of its duties.

## ARTICLE 9

## CLAIMS CONCERNING BENEFITS

9.1.   Determination of Benefits. Any question as to the entitlement to, or the calculation of. benefits under the Plan shall be determined by the Plan Administrator in its sole discretion pursuant to the terms of the Plan.

9.2.   Denial of Claims. In the event that any person makes a claim for benefits under the Plan and such claim is denied in whole or in part, the Plan Administrator,

within a reasonable time, shall furnish to such person a written notice of such denial setting forth the specific reasons for such denial, specific references to the provisions of the Plan upon which such denial is based, a description of any additional material or information necessary for such person to provide including an explanation why such material or information is necessary, and an explanation of the review procedure under the Plan.

9.3.   Review Procedure. Any person whose claim for benefits is denied in whole or in part may request, within sixty (60) days after receiving the foregoing notice, in writing addressed to the Plan Administrator, a review by the Plan Administrator of the denial. In addition, any person who makes a claim for benefits under this Plan and does not receive any decision on such claim within a reasonable time may request a review by the Plan Administrator of the claim. Any person requesting a review under this section shall have the opportunity to review pertinent documents and to submit a written statement to the Plan Administrator, shall be entitled to request a hearing before the Plan Administrator, and shall be entitled to have representation in connection with this review procedure.

9.4.   Determinations Upon Review. Upon receipt of a request for a review under Section 9.3 above, the Plan Administrator shall render a decision as promptly as possible, and, in any event, within sixty (60) days from such receipt, unless special circumstances (such as the need to hold a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than one hundred twenty (120) days from such receipt. The decision of the Plan Administrator shall be in writing and shall include the specific grounds for the decision and specific reference to the provisions of the Plan upon which the decision is based. The decision of the Plan Administrator will be final.

9.5.   Maintenance of Records. The Plan Administrator shall maintain a record of all applications for benefits, requests for review, and responses thereto.

## ARTICLE 10

## MISCELLANEOUS PROVISIONS

10.1.   Rights Reserved by Sponsoring Employer. The adoption and maintenance of this Plan shall not be construed as creating any contract of employment between the Sponsoring Employer and any Employee, and the Sponsoring Employer shall have the right in all respects to deal with its Employees, their hiring, discharge, compensation and conditions of employment, as though the Plan did not exist. No Employee shall have any right to question the action of the Sponsoring Employer in terminating its liabilities to contribute to the Plan or in terminating the Plan in its entirety. Each Participant shall have the right only to see the records of the Sponsoring Employer or the Plan with respect to his or her own participation and shall have no right to inquire as to benefits of other persons or other matters.

The sole rights of a Participant under the Plan shall be to have the Plan administered according to its provisions, to receive whatever benefits he or she may be entitled to hereunder, and to name the Beneficiary to receive any death benefits to which such person may be entitled pursuant to the terms of the Plan.

10.2.   Nonassignability of Interest.  The Plan is established for the purpose of providing for the support of the Participants upon their retirement and for the support of their families as is herein provided.  No right or interest of any kind of any Participant in the Plan shall be transferable or assignable by the Participant or subject to alienation, anticipation or encumbrance by the Participant, and insofar as the laws of the District of Columbia or any other jurisdiction the laws of which may govern permit, no rights or interest of any kind of any Participant shall be subject to garnishment, attachment, execution or levy of any kind.

Any attempt to transfer, assign or pledge any of the Participant's interest in the Plan will not be recognized by the Trustee except to such an extent as may be required by law or to the extent the Participant is indebted to the Trustee.  The Trustee is precluded from complying with any domestic relations order unless such order is a "Qualified Domestic Relations order," within the meaning of Code section 414(p), as determined by the Plan Administrator.

10.3.   Legal Effect of Payment by Trustee.  Payments to a Participant, his or her legal representative or his or her Beneficiary, pursuant to the provisions of the Plan, to the extent thereof, shall be in full satisfaction of all claims hereunder against the Trustee, the Plan Sponsor, the Plan Administrator and the Sponsoring Employers, any of whom may require, as a condition precedent to such payment, the execution of an acceptable receipt and release.  Any benefit payable to or for the benefit of a minor, an incompetent person or other person incapable of receipting therefor will be deemed paid when paid to such person's guardian or to the party providing or reasonably appearing to provide for the care of such person.

10.4.   Agreement to Comply.  All parties to this Plan and all persons claiming any interest whatsoever hereunder agree to perform any and all acts and execute any and all documents and papers that may be necessary or desirable for the administration of the Plan.

10.5.   Partial Invalidity or Unenforceability.  If any provision of the Plan is declared invalid or unenforceable, such invalidity or unenforceability shall not affect any of the other provisions herein.

10.6.   Limitation of Liability.  Neither the Trustee, the Sponsoring Employers, the Plan Sponsor, nor the Plan Administrator shall be responsible for the validity of any contract, for the failure of any insurer to make any payment or provide any benefit under the contract or for the action of any person that renders any contract invalid or unenforceable.  Neither the Trustee, the Sponsoring Employers, the Plan Sponsor, nor the Plan Administrator shall be responsible for any inability to perform, nor for any delay in performing, any act occasioned by any restriction or provision of any contract.  In case it

- 38 -

becomes impossible for the Trustee, the Sponsoring Employers, the Plan Sponsor, or the Plan Administrator to perform any act under the Plan, an act shall be performed that in the judgment of the Plan Administrator will most nearly carry out the intention and purposes of the Plan. All parties to the Plan or in any way interested herein shall be bound by any acts performed under such conditions.

10.7.   Exclusive Benefit of Employees and Their Beneficiaries. The Plan is created for the exclusive benefit of the Employees of the Sponsoring Employers and their Beneficiaries. If any provision of the Plan is subject to more than one interpretation, then among those interpretations that are possible, that one shall always be given to the Plan and each and every one of its provisions that will be consistent with the Plan and an employer's plan within the meaning of Code section 401 and of ERISA or as they may be amended or replaced by any section of the federal law of like intent and purpose.

Except as provided by the terms contained in the Plan, no funds contributed hereunder or any assets of the Plan shall ever revert to, or be used or enjoyed by, the Employer or any successor of the Employer, nor shall any such funds or assets ever be used other than for the benefit of the Employees of the Employer or the Beneficiaries of such Employees (including the cost of maintaining and administering the Plan and Trust).

Each Employer Contribution is hereby made expressly contingent on the deductibility thereof for Federal income tax purposes for the year with respect to which such Employer Contribution is made. Each such Employer Contribution is further contingent upon the initial qualified status of the Plan.

10.8.   Headings of Sections. Headings of sections herein contained are included solely for convenience of reference. If there is any conflict between such headings and the text thereof, the text shall control.

10.9.   Governing Law. The Plan and Trust shall be construed, administered and governed in all respects by the laws of the District of Columbia.

10.10.   Binding Force. A Participant shall be deemed conclusively to have assented to the terms of the Plan, to any subsequent amendments and to the terms of any contracts that are negotiated by the Committee concerning the Plan or any contracts negotiated and entered into by the Trustee with regard to investments, and shall be bound thereafter with the same force and effect as if he or she had formally executed the terms of the Plan.

10.11.   Construction. The singular form of any word shall include the plural unless the context clearly indicates to the contrary. The words "hereof," herein," "hereunder" and similar compounds of the word "here" shall mean and refer to the entire Plan, and not to any particular provision or section.

10.12.   EGTRRA Model Amendments

Effective as of January 1, 2002, the amendments to Sections 2.14, 2.35 and 5.6 and Article 13 hereof that are effective as of January 1, 2002 (the "EGTRRA

- 39 -



Amendments") are intended (i) to reflect the model amendments set forth in IRS Notice 2001-57 (or good faith modifications thereof) designed to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"), (ii) as good faith compliance with the requirements of EGTRRA and are to be construed in accordance with EGTRRA and the guidance issued thereunder, and (iii) shall supersede the other provisions of the Plan to the extent that such other provisions are inconsistent with the EGTRRA Amendments.

## ARTICLE 11

## AMENDMENTS TO THE PLAN

11.1.  Reservation of Right to Amend Plan.  The Plan Sponsor reserves the right to modify or amend this Plan at any time. It may make any amendment that it deems advisable, including, but not limited to, any amendment to ensure the continued qualification of this Plan under the provisions of the Code. Any amendment shall be made pursuant to a resolution adopted by the Board of Directors of the Plan Sponsor.

11.2.  Restrictions on Amendments.  No amendment shall retroactively deprive any Participant or Beneficiary of any nonforfeitable interest or accrued benefit under the Plan. An amendment that has the effect of retroactively eliminating or reducing early retirement benefits or an optional form of benefit shall be treated as reducing accrued benefits.

## ARTICLE 12

## PLAN TERMINATION OR MERGER OR CONSOLIDATION

12.1.  Plan Termination.  The Plan Sponsor reserves the right to terminate this Plan in whole or in part for any reason at any time. Such termination shall be effected by a resolution of the Board of Directors of the Plan Sponsor.

12.2.  Plan Merger or Consolidation.  In the event of any merger or consolidation of the Plan with, or transfer in whole or in part of the assets and liabilities of the Trust Fund to another trust fund held under any other plan of deferred compensation maintained or to be established for the benefit of all or some of the Participants of this Plan, the assets of the Trust Fund applicable to such Participants shall be transferred to the other trust fund only if:

(a)  each Participant would (if the other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer that is equal to or greater than the benefit he or she would have been entitled to receive immediately before the merger, consolidation or transfer (if this Plan had been terminated);

- 40 -

(b)      resolutions of the Boards of Directors of the Sponsoring Employers under this Plan, and of any new or successor employer of the affected Participants, shall authorize such transfer of assets; and, in the case of a new or successor employer of the affected Participants, its resolutions shall include an assumption of liabilities with respect to such Participants' inclusion in the new employer's plan; and

(c)      such other plan and trust are qualified under Code sections 401(a) and 501(a).

## ARTICLE 13

### TOP-HEAVY PROVISIONS

13.1.   Application. If it is determined that this Plan is a Top-Heavy Plan as defined in Section 13.4, with respect to the Employer, then pursuant to Code section 416, the following provisions of this Article 13 shall apply for the Plan Year, notwithstanding any other Plan provisions to the contrary.

13.2.   Top-Heavy Vesting. A Participant shall have a nonforfeitable right to the percentage of his or her Accrued Benefit determined under the following Vesting schedule:

| Vesting Service | Nonforfeitable Percentage |
|---|---|
| less than two | 0% |
| two | 20% |
| three | 40% |
| four | 60% |
| five | 100% |

The above Vesting schedule shall not apply to Participants who do not complete at least one (1) Hour of Service after the Plan becomes Top-Heavy.

(b)      If the Vesting schedule under the Plan shifts into or out of the above schedule for any Plan Year due to the Plan's Top-Heavy status, such shift shall be deemed to be an amendment to the Vesting schedule. In that event, any Participant with at least three (3) Years of Service and at least one (1) Hour of Service in any Plan Year beginning on or after January 1, 1989 at the time of such shift in Vesting schedules may elect to have his or her Vested interest determined under the Vesting schedule in effect prior to the amendment. An election under the preceding sentence may be made at any time within sixty (60) days after the latter of the date (a) the amendment is adopted, (b) the amendment becomes effective, or (c) the Participant is issued written notice of the amendment by the Plan Administrator. An election made under this section shall be irrevocable.

- 41 -



(b)    resolutions of the Boards of Directors of the Sponsoring Employers under this Plan, and of any new or successor employer of the affected Participants, shall authorize such transfer of assets; and, in the case of a new or successor employer of the affected Participants, its resolutions shall include an assumption of liabilities with respect to such Participants' inclusion in the new employer's plan; and

(c)    such other plan and trust are qualified under Code sections 401(a) and 501(a).

## ARTICLE 13

## TOP-HEAVY PROVISIONS

13.1.    <u>Application</u>. If it is determined that this Plan is a Top-Heavy Plan as defined in Section 13.4, with respect to the Employer, then pursuant to Code section 416, the following provisions of this Article 13 shall apply for the Plan Year, notwithstanding any other Plan provisions to the contrary.

13.2.    <u>Top-Heavy Vesting</u>. A Participant shall have a nonforfeitable right to the percentage of his or her Accrued Benefit determined under the following



Vesting schedule:

| Vesting Service | Nonforfeitable Percentage |
|---|---|
| less than two | 0% |
| two | 20% |
| three | 40% |
| four | 60% |
| five | 100% |

The above Vesting schedule shall not apply to Participants who do not complete at least one (1) Hour of Service after the Plan becomes Top-Heavy.

(b)    If the Vesting schedule under the Plan shifts into or out of the above schedule for any Plan Year due to the Plan's Top-Heavy status, such shift shall be deemed to be an amendment to the Vesting schedule. In that event, any Participant with at least three (3) Years of Service and at least one (1) Hour of Service in any Plan Year beginning on or after January 1, 1989 at the time of such shift in Vesting schedules may elect to have his or her Vested interest determined under the Vesting schedule in effect prior to the amendment. An election under the preceding sentence may be made at any time within sixty (60) days after the latter of the date (a) the amendment is adopted, (b) the amendment becomes effective, or (c) the Participant is issued written notice of the amendment by the Plan Administrator. An election made under this section shall be irrevocable.

- 41 -



13.3.   Minimum Benefits  Each Participant who has completed at least one thousand (1000) Hours of Service during the Plan Year and is not a Key Employee shall accrue a minimum benefit derived from Employer Contributions, which, when expressed as an annual retirement benefit shall not be less than the lesser of (1) two percent (2%) of the Participant's Top-Heavy Average Compensation multiplied by the Participant's Top-Heavy Years of Service, or (2) twenty percent (20%) of the Participant's Top-Heavy Average Compensation. Any such minimum benefit accrual shall be determined without regard to Social Security contributions. Top-Heavy Average Compensation shall mean the Participant's average compensation during the period of years (not exceeding five (5)) in which the Participant had the greatest aggregate compensation from the Sponsoring Employer and its Related Employers. For purposes of determining the Participant's Top-Heavy Average Compensation, no year prior to 1984 or after the last year the Plan was a Top-Heavy Plan shall be taken into account. Top-Heavy Years of Service shall mean all Years of Service except (1) Years of Service ending in a Plan Year beginning before January 1, 1984, (2) Years of Service completed in any Plan Year during which the Plan was not a Top-Heavy Plan as defined in Section 13.4, and (3) for Plan Years beginning after 2001, Years of Service completed in any Plan Year during which the Plan benefits (within the meaning of Code section 410(b)) no Key Employees or former Key Employees.

(b)   The minimum benefit described in (a) above shall not be required to be accrued or shall be appropriately reduced for any non-Key Employee who receives sufficient Employer Contributions under a defined contribution plan maintained by the Sponsoring Employer or any of its Related Employers to satisfy the rules prescribed by the Secretary for reducing or eliminating minimum benefit accruals.

13.4.   Top-Heavy Determination.  This Plan shall be deemed to be a Top-Heavy Plan for any Plan Year, if, as of the Determination Date, the Present Value of the Accrued Benefits under the Plan for all Key Employees exceeds sixty percent (60%) of the Present Value of the Accrued Benefits under the Plan for all Participants. The Accrued Benefit of an Employee who has not performed Service at any time during the five (5) year period (one (1) year period for Plan Years beginning after 2001) ending on the Determination Date shall not be taken into account.

(b)   For purposes of this Article, the phrase Present Value of the Accrued Benefits shall mean the actuarially determined Present Value of a Participant's Accrued Benefit under the Plan, determined under the following assumptions: (1) Present Values will be determined as of the Valuation Date used for computing Plan costs for minimum funding that falls within the twelve (12) month period ending on the Determination Date, (2) Accrued Benefits are determined as if the Participant voluntarily terminated Service as of the Valuation Date, (3) interest is at a rate of six and one half percent (6-1/2%), compounded annually, and (4) mortality is determined under the Unisex Pension 1984 Mortality Table (UP-1984).

(c)   The Present Value of Accrued Benefits (and the amounts of Account balances) of a Participant as of the Determination Date shall be increased by any distributions made with respect to the Participant under the Plan, and any plan aggregated





with the Plan under Code Section 416(g)(2), (i) for Plan Years beginning before 2002, during the five (5)-year period ending with the Determination Date, and (ii) for Plan Years beginning after 2001, during the one (1)-year period ending with the Determination Date (or, in the case of a distribution made for a reason other than separation from service, death or disability, during the five (5)-year period ending with the Distribution Date). The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Code section 416(g)(2)(A)(i).

(d)     If a Participant was formerly a Key Employee but is not a Key Employee for the Plan Year in question, the Present Value of the Participant's Accrued Benefits under the Plan shall not be taken into account for purposes of determining whether the Plan is a Top-Heavy Plan.

13.5.   Aggregation. Each plan of the Employer required to be included in an Aggregation Group shall be deemed to be a Top-Heavy Plan if such group is a Top-Heavy Group.

(b)     For purposes of this Article 13, the term Aggregation Group shall include all plans of the Employer in which a Key Employee is a Participant and any other plan of such Employer that enables such plan or plans to meet the requirements of Code section 401(a)(4) or 410. Any other plan of the Employer, may, at the option of the Employer, be treated as a part of an Aggregation Group, if the Aggregation Group would continue to meet the requirements of Code sections 401(a)(4) and 410.

(c)     For purposes of this Article, the term Top-Heavy Group shall mean any Aggregation Group if, as of the Determination Date, the sum of (1) the Present Value of the Accrued Benefits for Key Employees under all defined benefit plans included in the group and (2) the aggregate of the Accounts for all Key Employees under all defined contribution plans included in the group, exceeds sixty percent (60%) of a similar sum determined for all Participants of all plans included in such group.

(d)     Notwithstanding anything to the contrary herein, this Plan will not be considered a Top-Heavy Plan if the Aggregation Group of which it is a part is not a Top-Heavy Group.

## ARTICLE 14

## THE TRUST AND THE TRUSTEE

14.1.   The Trust. This Plan shall be funded solely through Employer contributions. All contracts, cash or other property as may from time to time be paid over or delivered to the Trustee, together with any increment thereto and income therefrom, shall be held by the Trustee as herein provided. This Trust shall be made up of two separate and distinct legal trusts, assets of which shall be held by the Trustee separate and apart from each other. One of these trusts, the ULLICO Inc. Pension Plan Trust, shall



fund the Sponsoring Employer ULLICO Group Benefit. The other one of these trusts, the Zenith Administrators, Inc. Central Pension Plan Trust, shall fund the Zenith Central Benefit.

14.2. <u>Responsibility for Management and Control of Assets</u>. The Trustee shall have exclusive authority and discretion to manage and control the assets held in trust under the Plan. However, they may designate agents to perform all or any of these functions on their behalf with respect to all or any portion of the Trust.

14.3. <u>General Powers of Trustee</u>. Except as otherwise provided herein, the Trustee in managing and administering the Trust shall be and hereby is empowered and authorized in its sole discretion:

(a)     <u>To Invest</u>. To invest and reinvest the Trust in such securities or other property as it may determine, including, but not limited to, bonds and stock of every kind and class, contracts issued by a legal reserve life insurance company and other property of any kind or description, whether or not such securities or other property are authorized by law for the investment of trust funds generally, under either the laws of the District of Columbia or under the laws of any other jurisdiction and without regard to the proportion any class of security or securities or other property so held may bear to the entire amount of the Trust. The Trustee may not invest in securities issued by the Employer, or in any "employer real property," as defined in ERISA section 407(d)(2) in excess of ten percent (10%) of the value of the Plan's assets, and any such investment shall be made in compliance with all applicable laws, including ERISA Sections 403, 406 and 407.

(b)     <u>To Sell</u>. To sell, exchange, transfer, or grant options with respect to any real or personal property at any time held by it, by private contract, public auction, or otherwise, for cash or upon credit, as the Trustee may deem advisable; and no person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency or propriety of any such sale or other disposition.

(c)     <u>To Acquire Real Estate</u>. To acquire any real estate through foreclosure, liquidation, or other salvage of any investment previously made by it; to hold such real estate pending liquidation thereof at such time, in such manner, and upon such terms as the Trustee may deem advisable; to manage, operate, repair, improve, partition, mortgage, or lease such real estate, upon such terms as the Trustee may deem advisable; and to use other trust assets for any of such purposes.

(d)     <u>To Settle Claims</u>. To compromise and settle any obligation due to or from it as Trustee hereunder; to reduce the rate of interest or extend or otherwise modify such obligation; or to foreclose upon default or otherwise enforce such obligation.

(e)     <u>To Vote Securities</u>. To vote in person or by proxy any stock, bonds, or other securities held by it; to exercise any options appurtenant thereto for the conversion thereof into other stocks, bonds or securities; to exercise any rights to subscribe for additional stocks, bonds or other securities and to make any and all

- 44 -



necessary payments therefor; and to join in, dissent from, or oppose the reorganization, recapitalization, consolidation, liquidation, sale or merger of corporations or properties in which it may be interested as Trustee.

(f) <u>To Hold Certain Securities</u>. To accept and hold any securities or other property received by it under the provisions hereof, whether or not the Trustee would be authorized hereunder then to invest in such securities.

(g) <u>To Make Instruments</u>. To make, execute, acknowledge and deliver any and all deeds, leases, assignments and instruments.

(h) <u>To Borrow</u>. To borrow or raise monies for the purposes of the Trust from any person or persons, including the Trustee, in its corporate nonfiduciary capacity, and for any sum so borrowed to issue its promissory note as Trustee and to secure the repayment thereof by pledging all or any part of the assets of the Trust; and no person loaning money to the Trustee shall be bound to see to the application of the money loaned or to inquire into the validity, expediency or propriety of any such borrowing.

(i) <u>To Transfer to Nominee</u>. To cause any investments from time to time held by it to be registered in, or transferred into, its name as Trustee or the name of its nominee or nominees, or to retain such investments unregistered or in form permitting transfer by delivery; but the books and records of the Trustee shall at all times show that all such investments are part of the Trust.

(j) <u>To Hold Property</u>. To hold any property at any place, except that the indicia of ownership of any part of the Trust shall not be maintained outside of the jurisdiction of the district courts of the United States, except as permitted by regulations issued under ERISA section 404(b).

(k) <u>To Appoint Agents</u>. To appoint such agents, including counsel, as it may deem advisable for the administration of the Trust.

(l) <u>To Hold Unproductive Assets</u>. To retain in cash and keep unproductive of income such amount of the Trust as it may deem advisable, or as the Sponsoring Employers may direct for the payment of benefits. The Trustee shall not be required to pay interest on such balances or on cash in its hands.

(m) <u>To Further Purposes of Trust</u>. To do all such acts, execute all such instruments, take all such proceedings and exercise all such rights and privileges with relation to any assets constituting a part of the Trust as are necessary to carry out the purposes of the Plan.

14.4. <u>Payments From and Charges to Trust</u>. Upon direction of the Committee, the Trustee shall pay from and charge to the Trust from time to time, such amounts as the Committee shall certify in writing are for the payment of benefits pursuant to the Plan.

14.5. <u>Duties of the Trustee</u>. The Trustee shall keep and maintain such accounts and records as it shall deem necessary and proper to record its transactions with respect to



its administration of the Trust, and shall make to the Committee such periodic reports as the Trustee shall deem necessary or proper.

14.6.. _Immunities of Trustee_. Except for its, his or her own negligence, willful misconduct or breach of fiduciary responsibility under ERISA, neither the Trustee nor any officer, director or employee thereof, as such, nor any agent of any of the foregoing shall have any liability hereunder. Nothing contained in this Plan shall be construed as obligating the Trustee either in its corporate or fiduciary capacity to make any payment or disbursement except from property held under the Trust. The Trustee's duties and obligations shall be limited to those expressly imposed upon it under the Plan or applicable law.

14.7.  _Removal_. The Plan Sponsor may remove the Trustee by filing written notice of removal with the Trustee. Such removal may be with respect to all of the Trust or any part thereof designated by the Plan Sponsor in such notice. Such removal shall take effect on any date at least 60 days after the filing of such notice, or on the date a successor Trustee shall have been appointed, whichever is earlier.

14.8.  _Successor Trustee_. In case the position of Trustee shall become vacant for any reason, a successor shall be appointed by the Plan Sponsor, and a written notice of such appointment shall be delivered to the successor so appointed and to the Trustee ceasing to act, if it is in existence.

14.9.  _Vesting of Property in New Trustee_. Any successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Plan Sponsor an instrument in writing accepting such appointment. Thereupon such successor Trustee shall become vested with all the properties, powers and duties of the predecessor Trustee with respect to the Trust nor any part thereof for which it is appointed successor Trustee. On the written request of the Plan Sponsor or of the successor Trustee, the Trustee ceasing to act shall execute and deliver an instrument transferring to the successor Trustee, the properties, rights, powers, and duties with respect to the Trust or any part thereof for which the successor Trustee is appointed; and shall assign, transfer and deliver to the successor Trustee any properties held in the Trust or in its custody which are to be held by the successor Trustee.

14.10.  _Final Settlement of Trustee's Account_. Within sixty (60) days after the resignation or removal of a Trustee, the Trustee shall file with the Plan Sponsor a written report setting forth all investments, receipts, disbursements and other transactions effected by it since its last report, and showing each asset held at the date of resignation or removal and the cost thereof as carried on the books of the Trustee. If within ninety (90) days from the date of filing such account, the Plan Sponsor, the Sponsoring Employers or any Participant shall fail to file with the Trustee written exceptions or objections to such account, the Trustee, including the Trustee who has been removed or who has resigned, shall be released from any liability or accountability to anyone with respect to the transactions covered by such account.

- 46 -



14.11. <u>Merger of Trustee</u>. Any corporation into which the Trustee is merged or with which it is consolidated, or any corporation resulting from a merger, reorganization or consolidation to which the Trustee is a party, or any corporation to which substantially all the trust business of the Trustee is transferred shall become the successor Trustee without the execution or filing of any other instrument or the performance of any other act.

14.12. <u>Right to Judicial Accounting</u>. Nothing contained in the Plan shall be construed as depriving the Trustee of the right to have a judicial settlement of its accounts. Upon any proceeding by the trustee for a judicial settlement of its accounts or for instructions, the only necessary party thereto in addition to the trustee shall be the Plan Sponsor. None of the Participants or Beneficiaries of the Plan shall have any right to compel an accounting, judicial or otherwise, by the Trustee, and all of them shall be bound with respect to all accounts submitted by the Trustee to the Plan Sponsor as provided by the Plan.

14.13. <u>Limitation of Liability of Trustee</u>. The Trustee has no duty to review or to make recommendations regarding investments made at the written direction of the Plan Administrator. The Trustee must retain any investment obtained at the written direction of the Plan Administrator until further directed in writing by the Plan Administrator to dispose of such investment. The Trustee shall not be liable for making, retaining or disposing of any investment pursuant to written directions described in this Section 4.13. Furthermore, the Plan Sponsor and Sponsoring Employers agree to indemnify and hold the Trustee harmless from any damages, costs or expenses, including reasonable counsel fees, that the Trustees may incur as a result of any claim asserted against the Trustee arising out of the Trustee's compliance with such written direction of the Plan Administrator.

14.14. <u>Appointment of an Investment Manager</u>. The Trustees may appoint an investment Manager to manage, acquire, or dispose of all or a portion of the Trust assets. "Investment Manager" shall mean a person or organization that satisfies the requirements of Section 3(38) of ERISA and has provided written acknowledgment to the Plan Sponsor and the Trustee that it does so.

If the Plan Administrator appoints an Investment Manager, the Trustee shall follow the written directions of the Investment Manager with respect to the management, acquisition, and disposal of Trust assets, including the powers set forth in this Article 14. The Trustee has no duty to review or to make recommendations regarding investments made at the written direction of the Investment Manager. The Trustee must retain any investment obtained at the written direction of the Investment Manager until further direction in writing by the Investment Manager to dispose of such investment.

The Trustee shall not be liable for making, retaining or disposing of any investment pursuant to written directions described in this Section 14.14. Furthermore, the Plan Sponsor and Sponsoring Employers agree to indemnify and hold the Trustee harmless from any damages, costs or expenses, including reasonable counsel fees, that

- 47 -



the Trustee may incur as a result of any claim asserted against the Trustee arising out of the Trustee's compliance with such written direction of the Investment Manager.

## ARTICLE 15

### SPECIAL EARLY RETIREMENT PROGRAM PROVISIONS

15.1.   Eligibility. Effective May 1, 1993 all nonunion, exempt management Plan Participants of the Employer (excluding employees of Zenith Administrators, Inc., Ironworkers, and certain highly compensated participants whose 1992 W-2 earnings were greater than $99,000), who were born between the periods of, January 1, 1928 and June 1, 1940 and who have at least four Vesting Years of Service with the Employer as of June 1, 1993, are eligible to become a SERP Retiree.

15.2.   Calculation of Benefits. Notwithstanding any other provision of the Plan, but subject to the limitations described in Section 5.6, the retirement benefit of a SERP Retiree shall be determined by crediting each SERP Retiree with an additional five Vesting Years of Service and five Years of Benefit Service and by assuming that the SERP Retiree has reached age 65.

A special additional SERP benefit will be paid either in the form of a lump-sum, or, at the election of a SERP Retiree, as an addition to the SERP Retiree's regular monthly retirement benefit payment.  The special benefit is determined by adding the age and service shown in the following table and multiplying the sum of the two factors by the SERP Retiree's Average Salary (only actual attained whole years of age and service as of June 1, 1993 will be considered for these age and service factors):

| Service Factor | | Age Factor | |
|---|---|---|---|
| 4-14 | .4 | 53-57 | .1 |
| 15-24 | .45 | 58-60 | .11 |
| 25+ | .5 | 61-63 | .115 |
| | | 64-65 | .12 |

\*     \*     \*

IN WITNESS WHEREOF, and of the adoption of this Plan on December 23, 2002, the Plan Sponsor has caused this ULLICO Inc. Pension Plan and Trust to be executed by its duly authorized officer.

ATTEST:

Grace H Kraemer

By Jennifer J. Wong
Jacqueline J. Wong



AMENDMENT NO. 1
TO THE ULLICO INC.
PENSION PLAN
AS AMENDED AND RESTATED
EFFECTIVE AS OF FEBRUARY 28, 2002

Effective as of January 1, 2002, the ULLICO Inc. Pension Plan (the "Plan") is amended to increase the Special Spouse Benefit in Subsections 7.1(b) and 7.1(e) and to restate Section 7.1 in its entirety as follows:

7.1 Qualified Preretirement Survivor Annuity. If a Vested Participant dies before beginning to receive a Retirement Benefit hereunder, a Qualified Preretirement Survivor Annuity shall be payable to his or her Surviving Spouse, if any, as follows:

(a) Participant Dies On Or After Earliest Retirement Date.

(1) If a Vested Participant dies on or after the Earliest Retirement Date as defined in Section 2.23 or Section 7.1(d), the Participant's Surviving Spouse, if any, shall receive the same benefit that would have been payable if the Participant had retired with an immediate fifty percent (50%) Qualified Joint and Survivor Annuity under Section 6.1(a) and (b), without regard to Section 6.1(c), on the day before the Participant's date of death.

(2) Notwithstanding (1) above, effective for Plan Years beginning after 2001, the Surviving Spouse of a Participant, if any, shall receive the same benefit that would have been payable if the Participant had retired with an immediate seventy-five percent (75%) Qualified Joint and Survivor Annuity under Section 6.1(a) and (b) with out regard to Section 6.1(c), on the day before the Sponsoring Employer ULLICO Group Participant's date of death. This Section 7.1(a)(2) shall not apply to the Surviving Spouse of a Participant in the Zenith Central Plan.

(b) Participant Dies Before Earliest Retirement Date. If a Participant dies before the Earliest Retirement Date, the Participant's Surviving Spouse, if any, shall receive the same benefit that would have been payable if the Participant had:

(1) separated from Service on the date of death;

(2) survived to the Earliest Retirement Date;

(3)(A) retired with an immediate fifty percent (50%) Qualified Joint and Survivor Annuity under Section 6.1(a) and (b), without regard to Section 6.1(c), at the Earliest Retirement Date;



(B) effective for Plan Years beginning after 2001, retired with an immediate seventy-five percent (75%) Qualified Joint and Survivor Annuity under Section 6.1(a) and (b) without regard to Section 6.1(c), at the Earliest Retirement Date (this Section 7.1(b)(3)(B) shall not apply to the Surviving Spouse of a Participant in the Zenith Central Plan); and

(4) died on the day after the Earliest Retirement Date.

(c) <u>Commencement Date</u>. A Surviving Spouse may direct commencement of Qualified Preretirement Survivor Annuity payments as of:

(1) the first (1st) of the month next following the later of the Participant's Earliest Retirement Date or the date of death of the participant; or

(2) any first of a month thereafter that is not later than the Normal Retirement Date.

(d) <u>Pre-Retirement Death Benefit</u>. In the case of a Participant who dies on or after the first (1st) day of the month next following date such Participant attains age 55, solely for purposes of this Section 7.1, the Earliest Retirement Date is the first (1st) day of the month in which the Participant dies.

(e) <u>Spouse Benefit</u>. In the case of a Surviving Spouse with respect to whom the requirements of Paragraph (1) below are satisfied, the adjustments set forth in Paragraph (2) below shall apply:

(1) The requirements of this paragraph are satisfied if the requirements of Subparagraph (a) or Subparagraph (b) below are satisfied:

(A) The requirements of this subparagraph are satisfied if the Participant:

(i) had completed at least ten (10) Sponsoring Employer ULLICO Group Years of Benefit Service;

(ii) had attained age fifty (50);

(iii) was in the employ of the Sponsoring Employer ULLICO Group on the day immediately preceding the date of death; and



2

(iv) was married to the Surviving Spouse for at least two (2) years prior to death;

(B) The requirements of this subparagraph are satisfied if the Participant:

(i) had completed at least five (5) Sponsoring Employer ULLICO Group Years of Benefit Service;

(ii) was in the employ of the Sponsoring Employer ULLICO Group at the time of incurring a Disability; and

(iii) was married to the Surviving Spouse for at least five (5) years prior to incurring a Disability.

(2) The adjustments applicable under this Paragraph are as follows:

(A) (i) The monthly payment of the portion of the Qualified Preretirement Survivor Annuity payable under 7.1(a) or (b) above, that is attributable to Sponsoring Employer Group Years of Benefit Service shall be increased if necessary, to make it equal to fifty percent (50%) of the amount of the monthly Normal Retirement Benefit or Deferred retirement Benefit that would have been payable to the Participant as a single life annuity beginning at age sixty-five (65) or the date of the Participant's death, whichever is later, based on the Participant's Average Salary and Sponsoring Employer ULLICO Group Years of Benefit Service as of the date of death;

(ii) Notwithstanding (i) above, effective for Plan Years beginning after 2001, the monthly payment of the portion of the Qualified Preretirement Survivor Annuity payable under 7.1(a) or (b) above, that is attributable to Sponsoring Employer Group Years of Benefit Service shall be increased if necessary, to make it equal to seventy-five percent (75%) of the amount of the monthly Normal Retirement Benefit or Deferred Retirement Benefit that would have been payable to the Participant as a single life annuity beginning at age sixty-five (65 ) or the date of the Participant's death, whichever is later, based on the Participant's Average Salary and Sponsoring Employer ULLICO Group Years of Benefit Service as of the date of death;

3

(B)   The monthly payments of the portion of the Qualified Preretirement Survivor Annuity attributable to Sponsoring Employer ULLICO Group Years of Benefit Service will commence on the first day of the month coincident with or next following the date of death of the Participant;

(C)   No monthly payment made under this Section 7.1 after the date a Surviving Spouse remarries shall be greater than the amount that would have been payable under this Section 7.1, if any, for such month, as if this Subsection 7.1(e) had never applied.



# ULLICO INC. PENSION PLAN AND TRUST
## AMENDMENT NUMBER TWO
### June 1, 2003 Early Retirement Program

This Amendment Number Two to the ULLICO Inc. Pension Plan and Trust is effective April 17, 2003.

**WHEREAS**, the ULLICO Inc. Pension Plan and Trust (the "Plan") was adopted by the Board of Directors effective December 31, 1994, and amended and restated effective as of February 28, 2002; and

**WHEREAS**, Article IV, Section 5 of the ULLICO Inc. Bylaws invests the Board of Directors with the authority to conduct, manage, and control the affairs and business of ULLICO Inc., and to make rules and regulations not inconsistent with the laws of the State of Maryland, or those of any state, in which ULLICO Inc. is doing business, or ULLICO Inc.'s Bylaws, for the guidance of the Officers and management of the affairs of ULLICO Inc.

**WHEREAS**, pursuant to Section 11.1 of the Plan, the Board of Directors may adopt a Resolution to amend the Plan;

**WHEREAS**, the Board of Directors, on April 16, 2003, adopted a Resolution implementing the June 1, 2003 Early Retirement Program, available to certain employees of ULLICO Inc. that have (i) attained age 55 with 15 years of service, or (ii) have attained age 65 with 5 years of service by June 1, 2003. To be eligible, such employees must elect retirement by June 1, 2003, and whose retirement date will take effect on June 1, 2003.

**WHEREAS**, on April 23, 2003, the Board of Directors clarified such Resolution to provide to that such Early Retirement Program shall be available as of April 16, 2003, only to those employees of ULLICO Inc. and its subsidiaries whose employers are included in the definition of "Sponsoring Employer ULLICO Group" under Section 2.59 of the Plan (hereinafter "Sponsoring Employer ULLICO Group Employees") that have attained age 55 with 15 years of service, or who have attained age 65 with 5 years of service by June 1, 2003. Such Sponsoring Employer ULLICO Group Employees must elect to retire by submitting a properly completed Election and Release Agreement to ULLICO Inc.'s Director of Corporate Benefits by no later than June 1, 2003 (or 45 days after notice of the Early Retirement Program is given, such notice to be given to all eligible Sponsoring Employer ULLICO Group Employees by no later than April 28, 2003), and retire effective June 1, 2003 (July 1, 2003 with respect to any eligible Sponsoring Employer ULLICO Group Employees who elect to participate in the Early Retirement Program after June 1, 2003).



**NOW, THEREFORE BE IT RESOLVED**, that Article 4 of the ULLICO INC. PENSION PLAN AND TRUST is amended to include Section 4.8, as follows:

### 4.8  June 1, 2003 Early Retirement Program

(a)  *Eligibility.*  A Sponsoring Employer ULLICO Group Employee shall be eligible for an early retirement benefit if he or she has (i) attained age 55 with 15 years of service, or (ii) has attained age 65 with 5 years of service, by June 1, 2003.  To elect early retirement under the June 1, 2003 Early Retirement Program, an eligible Sponsoring Employer ULLICO Group employee must elect retirement by June 1, 2003 (or 45 days after notice of the Early Retirement Program is given, such notice to be given to all eligible Sponsoring Employer ULLICO Group Employees by no later than April 28, 2003) by execution of an "Election and Release Form", approved by the Plan Sponsor, with a retirement date effective June 1, 2003 (July 1, 2003 with respect to any eligible Sponsoring Employer ULLICO Group Employee who elects to participate in the Early Retirement Program after June 1, 2003).

(b)  *Commencement of Payment.*  Payment of pension benefits under the Plan shall commence as of June 1, 2003, for Sponsoring Employer ULLICO Group Employees who elect to participate in the June 1, 2003 Early Retirement Program by June 1, 2003.  With respect to any Sponsoring Employer ULLICO Group Employee who is eligible to participate in such program, but who elects to participate in such program after June 1, 2003 (but in no event later than 45 days after notice of the program) benefit payment shall not commence until July 1, 2003.

(c)  *Calculation of Benefit*: A Sponsoring Employer ULLICO Group Employee shall be treated as if he or she retired at the Plan's definition of "Normal Retirement Date" as defined in Section 2.37 of the Plan.   Notwithstanding the preceding sentence, no Sponsoring Employer ULLICO Group employee who elects retirement under the June 1, 2003 Early Retirement Program shall receive benefit accruals, or be credited for service, beyond the date of such employee's effective date of Retirement (June 1, 2003 or July 1, 2003).

(d)  *Amount of Benefit.*  Benefits paid shall be equal to the Normal Retirement Benefit, as calculated pursuant to Section 5.1 of the Plan.

(e)  *Ineligible Employee.*  The Chairman of the Board, President, and Chief Executive Officer of ULLICO Inc. shall not be eligible to participate in the June 1, 2003 Early Retirement Program.





# ULLICO INC. PENSION PLAN AND TRUST
## AMENDMENT NUMBER THREE
### Change In Definition of Compensation

This Amendment Number Three to the ULLICO Inc. Pension Plan and Trust is effective April 23, 2003.

**WHEREAS,** the ULLICO Inc. Pension Plan and Trust (the "Plan") was adopted by the Board of Directors effective December 31, 1994 and amended and restated effective as of February 28, 2002; and

**WHEREAS,** Article VI, Section 2 of the ULLICO Inc. Bylaws invests in the Executive Committee the authority to exercise all of the duties and powers of the Board of Directors, with the exception of the authority to declare a dividend, to issue stock, or to recommend to Stockholders any action requiring Stockholder approval;

**WHEREAS,** on May 5, 1997, the Executive Committee of ULLICO Inc. adopted a Resolution creating the Benefits Committee, (now known as the Employee Benefit Plans Administrative Committee) and charged such Committee with full authority with respect to the administration of all plans created or to be created for the benefit and welfare of ULLICO Inc. employees and the employees of its subsidiaries;

**WHEREAS,** pursuant to Section 11.1 of the Plan, Plan Sponsor may adopt a Resolution to amend the Plan;

**WHEREAS,** the Committee, acting on behalf of the Plan Sponsor, after careful deliberation and consideration, including an evaluation of the associated costs thereto, wishes to amend the Plan's definition of "Compensation" as defined in Section 2.14 of the Plan to include overtime pay;

**NOW, THEREFORE BE IT RESOLVED,** that Article 2.14(a) and the first paragraph of Section 2.14 (b) of the ULLICO INC. PENSION PLAN AND TRUST are deleted in their entirety and replaced as follows:

2.14 Compensation means the following:

(a)     Except as described in (b) below, Sponsoring Employer ULLICO Group Compensation or Zenith Central Compensation, including but not limited to an Employee's earned income, wages, salaries, fees for professional services, and other amounts received for personal services actually rendered in the course of Service (including services as a Leased Employee) with the Employer (including, but not limited to, commissions paid to salespersons, compensation for commissions on insurance premiums, tips and bonuses, and effective January 1, 2000 regularly scheduled incentive compensation, and effective January 1, 2000 for participants retiring from active service on or after April 17, 2003 overtime



payments for hourly wage earners) actually paid or includable in gross income during such Plan Year, and

(b)     For purposes of the limitations of Section 5.6 and the Top-Heavy rules of Article 13, Compensation for a Plan Year shall be defined as an Employee's total Compensation as described in Section (a) above, actually paid or includable in gross income during such Plan Year.

All other provisions, including Sections 2.14 (b)(1) and (2), and Section 2.14(c) shall remain in full force and effect.

**This Amendment shall be effective January 1, 2000, for all Participants retiring from active service on or after April 17, 2003.**