## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re* **ULLICO INC. LITIGATION** ) ) ) | |
| ——————————————— ) | **CONSOLIDATED DOCKET AND** |
| **RELATED TO: ALL CASES** ) ) ) ) | **CASE NO. 03cv1556 (RJL)** |

———————————————————————————————

## MEMORANDUM OPINION
(March **31**, 2009) [#334, 335, 336]

Counterclaim plaintiffs[1] (or the "ULLICO parties") alleged that

counterclaim defendants Joseph Carabillo, John K. Grelle, and James W. Luce

breached their fiduciary duties to ULLICO Inc. ("ULLICO") and its various

benefit plans, and that Carabillo engaged in legal malpractice. Counterclaim

defendants (or "Committee Member defendants") filed for summary judgment,

arguing that no genuine issue of material fact existed as to any of the six counts in

the ULLICO parties' Consolidated Counterclaim. Counterclaim plaintiffs filed

motions for partial summary judgment on two counts of the Consolidated

Counterclaim: (1) breach of fiduciary duty to the Qualified Plan, and (2)

---

[1] Counterclaim plaintiffs are ULLICO Inc.; ULLICO Inc. Pension Plan and Trust; Administrator of the ULLICO Inc. Pension Plan and Trust; Plan Administration Committee of the ULLICO Inc. Pension Plan and Trust; Union Labor Life Insurance Company; Union Labor Life Auxiliary Retirement Benefits Plan; Administrator of the Union Labor Life Auxiliary Retirement Benefits Plan; ULLICO Inc. Employees' Life and Health Welfare Plan; Administrator of the ULLICO Inc. Employees' Life and Health Welfare Plan; ULLICO Inc. Non-Qualified Deferred Compensation Plan; and Damon Gasque, Joseph Linehan, Peter Haley, Marcellus Duckett, James Paul, and Jeffrey Bryan in their capacity as plan administrators.

professional negligence against counterclaim defendant Carabillo.[2] For the

following reasons, counterclaim defendants' motion is GRANTED in part and

DENIED in part, and counterclaim plaintiffs' motions are DENIED.

## BACKGROUND

ULLICO is a holding company created to raise capital for its various

subsidiaries, which provide services to unions, union members, and their families.

Consolidated Counterclaim ("Countercl.") ¶ 3.  ULLICO sponsors several benefit

plans, including the ULLICO Inc. Pension Plan and Trust (the "Qualified Plan"),

ULLICO Inc. Employees' Life and Health Welfare Plan (the "Welfare Plan"), and

Union Labor Life Auxiliary Retirement Benefits Plan (the "Auxiliary Plan").

Countercl. ¶¶ 5-7.  ULLICO also established the ULLICO Inc. Non-Qualified

Deferred Compensation Plan (the "Deferred Compensation Plan").  Countercl. ¶ 8.

Counterclaim defendants Carabillo, Grelle, and Luce[3] served as members of the

Benefits Committee, which acted as plan administrator for the Qualified Plan,

Welfare Plan, Auxiliary Plan, and Deferred Compensation Plan.  Countercl. ¶¶ 11-

13.

In addition to their service on the Benefits Committee, Carabillo, Grelle,

and Luce were officers of ULLICO.  Carabillo served as the company's Chief

Legal Officer from March 2, 1987 until he was terminated on May 30, 2003.

---

[2] While not filed as cross-motions for summary judgment, the briefs addressed related questions of law and fact, and the Court resolves all three motions with this opinion.

[3] The former Chairman and CEO of ULLICO, Robert Georgine, also served as a member of the Benefits Committee and was a counterclaim defendant.  Countercl. ¶ 10.  ULLICO moved to dismiss all its claims against Georgine, which the Court granted on May 23, 2006.  Order, May 23, 2006 [Dkt. #185].

Countercl. ¶ 11.  ULLICO employed Grelle as its Senior Vice President and Chief Financial Officer from January 2, 1996 until his resignation on February 25, 2003. Countercl. ¶ 12.  Luce was ULLICO's Executive Vice President from 1990 until his retirement on June 1, 2003.  Countercl. ¶ 13; Countercl. Defs' Statement of Mat. Facts ("Countercl. Def. Facts") ¶ 3.

In early 2002, press reports began to appear concerning allegations of self-dealing by ULLICO corporate insiders.  Countercl. ¶ 85.  The Board of Directors appointed former Illinois Governor James Thompson to investigate ULLICO's stock repurchase programs, stock purchase offers to directors and officers, and investment in the company Global Crossing, which produced a significant, but temporary, rise in ULLICO stock prices.  Countercl. ¶¶ 38, 85.  ULLICO spent $6 million on the internal investigation of the stock transactions, including funds spent defending officers and directors in the investigation.  Countercl. ¶ 89.  In the months and years following the issuance of the Thompson Report on November 26, 2002, Countercl. ¶ 85, ULLICO became the target of multiple state and federal investigations, Countercl. ¶ 90, and Carabillo, Grelle, and Luce left the company, Countercl. ¶ 92.

Counterclaim defendants filed several suits in this Court for, among other things, recovery of their benefits under the various plans offered by ULLICO.  The Court consolidated the cases for discovery purposes.  Consolidation and Scheduling Order, June 1, 2005 [Dkt. #115].  In its Consolidated Counterclaim, the ULLICO parties argued that Carabillo, Grelle, and Luce breached their

3

fiduciary duties to the company and its benefit plans, and that Carabillo engaged in legal malpractice. Countercl. ¶¶ 94-159. The plans at issue – and the largely undisputed facts surrounding the counterclaim defendants' conduct as to each of the plans – are as follows:

## A. Qualified Plan

Adopted in 1994, the Qualified Plan is a defined benefits plan; participants are entitled to a set amount of benefits each month, determined by a benefits formula set forth in the plan documents. Countercl. Def. Facts ¶ 13. The benefits are paid out of a trust established by ULLICO. Countercl. Def. Facts ¶ 14.

### 1. Stock Repurchase Program

As plan administrator, the Benefits Committee was responsible for the management and investment of the Qualified Plan's assets, which included ULLICO stock. Countercl. Def. Facts ¶ 93. On November 3, 2000, ULLICO's Board of Directors adopted a stock repurchase program under which the company could repurchase up to $30 million of ULLICO stock at a "book value" price of $146.04. Countercl. Def. Facts ¶ 105. This price was a substantial increase over recent years; in 1998, for example, the "book value" of the stock was $28.70. Countercl. Def. Facts ¶ 106. This increase in the value of ULLICO stock was largely attributable to the company's investment in Global Crossing, Countercl. Def. Facts ¶ 107, which had skyrocketed in value throughout 1998 and 1999, Countercl. ¶ 17.

4

Under the terms of the stock repurchase program, ULLICO had to receive tenders of all shares owned by shareholders holding more than 2% of the outstanding Class A and Class B shares of ULLICO stock. Countercl. Def. Facts ¶ 108. This rule could be waived by Chairman Robert Georgine if the waiver would not result in a "significant redistribution of equity." Countercl. Def. Facts ¶ 110. The Qualified Plan was one of fifteen shareholders that held more than 2% of the outstanding shares of ULLICO stock, Countercl. Def. Facts ¶ 111, and all fifteen shareholders tendered their stock as part of the repurchase plan, Countercl. Def. Facts ¶ 127.

The stock repurchase program was fully subscribed, and ULLICO repurchased certain tendered shares on a prorated basis. Countercl. Def. Facts ¶ 129. The company repurchased all the tendered stock from those shareholders who held less than 10,000 shares. Countercl. Def. Facts ¶ 104. Those shareholders with more than 10,000 shares were subject to proration. *Id.* The Qualified Plan held more than 10,000 shares and was able to redeem only 5,794 of the 263,233 shares it tendered. ULLICO's Response to Committee Member Defendants' Statement of Material Facts ("Countercl. Pl. Facts") ¶ 129. Counterclaim defendants also participated in the stock repurchase program, but each of them had less than 10,000 in ULLICO stock. Carabillo, Grelle, and Luce were therefore able to redeem their shares in full. Countercl. Pl. Facts ¶¶ 126, 129.

Before the 2000 stock repurchase, the Qualified Plan owned 263,233 of ULLICO stock out of the 7,866,333 shares outstanding, or 3.3% of the stock.

Countercl. Pl. Facts ¶ 146. According to counterclaim plaintiffs' calculations, the Qualified Plan should have received 3.3% of the $30 million expended under the 2000 stock repurchase program, or $1,001,349. *Id.* The Qualified Plan only received $846,155.76. *Id.*

The Board of Directors again authorized a stock repurchase in 2001, this time with a book value of $74.87 per share. Countercl. Def. Facts ¶ 131. The Benefits Committee tendered the Qualified Plan's stock during this repurchase program. Countercl. Def. Facts ¶ 134. The Qualified Plan's stock was again prorated, and it sold only 6,841 shares of ULLICO stock out of the 257,439 it tendered. Countercl. Def. Facts ¶¶ 142-44.

### 2. *Amendments to the Qualified Plan*

Counterclaim defendants also twice amended the Qualified Plan in ways that inured to their personal benefit. The first amendment, adopted at the Benefits Committee's October 20, 1999 meeting, changed the definition of "Sponsoring Employee ULLICO Group Compensation" in the Qualified Plan to include "regularly established annual incentive compensation with no maximum, effective January 1, 2000." Countercl. Def. Facts ¶ 73. This amendment effectively increased retirement benefits available to employees who were significantly compensated through incentive payments. Countercl. Def. Facts ¶¶ 73-74. Carabillo, Luce, and Grelle fell into this category; the amendment, therefore, significantly increased their retirement benefits. Statement of Material Facts in

Support of ULLICO's Mot. for Partial Summ. J. on Plan Amendments

("Countercl. Pl. Plan Amendment Facts") ¶ 20.

On July 24, 2001, the Benefits Committee again amended the Qualified

Plan. Countercl. Def. Facts ¶ 77. With this amendment to the accrual formula, the

committee increased the percentage of an employee's average salary used to

determine his normal retirement benefit. *Id.* Again, this change, which increased

the percentage from 2% to 2.5%, directly benefited Carabillo, Luce, and Grelle.

Countercl. Pl. Plan Amendment Facts ¶ 20. Between the two amendments, the

counterclaim defendants allegedly increased their benefit levels by nearly 100%.

*Id.*

Despite the passage of these amendments, counterclaim defendants may not

have possessed the authority to amend the Qualified Plan at all. Section 11.1 of

the plan provides that any amendment to the plan "shall be made pursuant to a

resolution adopted by the Board of Directors[.]" Countercl. Def. Facts ¶ 25. On

May 5, 1997, the Executive Committee, which possessed many of the powers of

the Board of Directors, adopted a resolution creating the Benefits Committee.

Countercl. Def. Facts ¶¶ 38-40. This resolution stated that the Benefits Committee

would "meet regularly to administer, plan and *effect changes* in the benefit plans."

Countercl. Def. Facts ¶ 38 (emphasis added).

The counterclaim defendants believed the resolution creating the Benefits

Committee gave the committee the power to amend the plan. Countercl. Def.

Facts ¶¶ 43, 48-50. This belief was held by Carabillo, Chief Legal Officer of the

company and a member of the committee, who advised his fellow members that they possessed amendment authority. Countercl. Pl. Statement of Mat. Facts in Support of Its Mot. for Partial Summ. J. Against Joseph Carabillo for Legal Malpractice ¶ 14. Counterclaim plaintiffs argue that the terms of the Qualified Plan unambiguously did not give counterclaim defendants such authority, and that counterclaim defendants' belief that it did is irrelevant. Countercl. Pl. Facts ¶¶ 43, 48-50.

### B. Auxiliary and Welfare Plans

In addition to the Qualified Plan, ULLICO sponsors two other benefit plans for many of its employees. The Welfare Plan maintains insurance policies that provide medical and life insurance coverage to participants. Countercl. Def. Facts ¶ 11. The Auxiliary Plan is a top hat plan; its purpose is to provide benefits that would be due under the Qualified Plan, but for Internal Revenue Code limits on the benefits that can be paid to an individual. Countercl. Def. Facts ¶ 20. Both the Welfare and Auxiliary plans are unfunded plans supported exclusively by the general assets of ULLICO. Countercl. Pl. Facts ¶ 20.

### C. Deferred Compensation Plan

The Compensation Committee of the Board of Directors established the Deferred Compensation Plan, a top hat plan that covers only a select group of management or highly compensated employees, in August 1998. Countercl. Def. Facts ¶¶ 148-49. Counterclaim defendants participated in the plan. Countercl. Def. Facts ¶ 150. Under the terms of the plan, participants could defer up to 25%

of their base salary and 100% of their bonuses and incentive awards. Countercl. Def. Facts ¶ 151. Participants could place their deferred compensation in "deemed investments," including ULLICO stock. Countercl. Def. Facts ¶ 152. The counterclaim defendants chose to move their entire account balances into "deemed investments" in ULLICO stock. Countercl. Pl. Facts ¶ 153. Carabillo, with the approval of Grelle, retrieved the entirety of his plan account under a financial hardship clause, which allows a participant to prematurely withdraw funds from the plan. Countercl. Pl. Facts ¶ 155. Carabillo's reason for withdrawal – to help his mother with her medical expenses – is not one of the enumerated financial hardships that allows a participant to take advantage of this provision. *Id.*

Counterclaim plaintiffs seek to disgorge or deny benefits otherwise owed to counterclaim defendants under each of these four plans. For the following reasons, counterclaim plaintiffs cannot, as a matter of law, succeed on all of their counterclaims, and counterclaim defendants' motion for summary judgment is therefore GRANTED in part.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a motion

for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  In deciding whether there is a genuine issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

The majority of the Consolidated Counterclaim addresses breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA").  29 U.S.C. §§ 1001 *et seq.*  ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).  To establish a breach of fiduciary duty to an ERISA benefit plan, a plaintiff must show, at a minimum, that (1) ERISA's fiduciary obligations apply to the plan, *see* 29 U.S.C. § 1101(a), and (2) the defendant acted as a fiduciary of the plan, *see* 29 U.S.C. § 1002(21).  The allegations of breaches of fiduciary duty to the Auxiliary Plan, Welfare Plan, and Deferred Compensation Plan do not, for one reason or another, meet these basic requirements, and the Court therefore grants the motion for summary judgment, at least in part, on each of those claims.  Disputed issues of fact as to other claims, such as the allegation of breach of fiduciary duty to the Qualified Plan, prevent the Court from entering judgment on those counts at this early stage.

## I.    Breach of Fiduciary Duty to the Qualified Plan

Counterclaim plaintiffs and counterclaim defendants both moved for summary judgment on the question of breach of fiduciary duty to the Qualified Plan (Count I). Counterclaim plaintiffs moved for partial summary judgment in their favor only on the claim of breach of fiduciary duty as it relates to the allegedly unauthorized amendments. Counterclaim defendants argue that neither the amendments nor the stock repurchase program qualify as a breach of fiduciary duty to the Qualified Plan, and Count I should be dismissed in its entirety. Because both the amendment and the stock repurchase allegations rest on disputed issues of material fact, the motions for summary judgment are DENIED.

### A. Plan Amendments

In every case charging a breach of ERISA fiduciary duty, the threshold question is "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). A person acts as a fiduciary to the extent he "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §§ 1002(21)(A)(i), (iii).

Not all actions taken by an ERISA fiduciary implicate these responsibilities because "the trustee under ERISA may wear different hats." *Pegram*, 530 U.S. at

11

225. For example, an employer or plan sponsor does not act as an ERISA fiduciary when taking steps to modify or amend an employee benefit plan. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("an employer's decision to amend a pension plan . . . does not implicate the employer's fiduciary duties"); *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) ("the act of amending a pension plan does not trigger ERISA's fiduciary provisions"); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans"); *Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 286 F.3d 598, 599 (D.C. Cir. 2002) ("employers and plan sponsors do not act in a fiduciary capacity when they modify, adopt or amend plans"). Rather than acting as fiduciaries, employers or plan sponsors amending a plan are "analogous to the settlors of a trust[.]" *Lockheed Corp.*, 517 U.S. at 890.

The counterclaim defendants – plan administrators rather than employers or plan sponsors – argue that they, too, acted as settlors when they amended the Qualified Plan, and therefore they did not breach their fiduciary duty to the plan. The question here is whether plan administrators possibly *without* authority to amend the plan, such as the Committee Member defendants, can also act as settlors. The few cases cited by counterclaim defendants in support of their theory that any act of amendment by plan administrators – authorized or not – falls outside the scope of ERISA's fiduciary provisions all involved administrators who had been given authority to amend the plan. *See Campbell v. BankBoston, N.A.*,

12

327 F.3d 1, 3 (1st Cir. 2003) ("the administrator had the power to amend, modify, or discontinue the plan for any reason at any time"); *Siskind v. Sperry Ret. Program*, 47 F.3d 498, 501 (2d Cir. 1995) ("[t]he plan documents also identified the Committee [the plan administrator] as the entity with power to amend the plan"). There is little authority for the proposition that a plan administrator without power to amend the plan acts as a settlor if he modifies the plan.

The analysis undergirding the legal distinction between settlor acts and fiduciary acts supports the conclusion that plan administrators cannot take refuge in the *Curtiss-Wright/Lockheed* line of cases unless they have amendment authority. *See Lockheed Corp.*, 517 U.S. at 890; *Curtiss-Wright Corp.*, 514 U.S. at 78. ERISA does not impose a fiduciary responsibility on employers or plan sponsors when they amend a plan because "the trustee under ERISA may wear different hats." *Pegram*, 530 U.S. at 225. An employer can wear at least two hats: fiduciary when managing a plan and settlor when amending a plan. *See id.* But amending or terminating a plan is typically beyond the power of a plan administrator. *Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996). To call a plan administrator who usurps this authority a settlor, and thus beyond the reach of ERISA's fiduciary obligations, would allow any administrator to amend a plan in unauthorized, harmful ways without consequence. Such a holding would make a mockery of ERISA's command that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

Thus, to determine whether the Committee Member defendants breached their fiduciary duty, the Court first must determine whether a valid delegation of amendment authority occurred. This is a factual issue in dispute. The ULLICO parties argue that, under the terms of the Qualified Plan, only the company's Board of Directors, by resolution, can amend the plan. Countercl. Pl. Plan Amendments Reply at 4. The Committee Member defendants point to the resolution instituting the Benefits Committee, and the circumstances surrounding the creation of the committee, as support for their position that the Board delegated its amendment authority. Countercl. Def. Plan Amendments Opp. at 10-14. Because this issue of fact must be resolved before the Court can determine whether the Committee Member defendants breached their fiduciary duties to the plan, both counterclaim plaintiffs' motion for partial summary judgment and the Committee Member defendants' motion for summary judgment on this aspect of Count I must be DENIED.[4]

---

[4] Counterclaim plaintiffs further argue that Maryland corporate law, Md. Code Ann., Corps. & Ass'ns § 2-411(a), prohibits the delegation of "any of the powers of the board of directors" to any committee that includes non-directors, such as the Benefits Committee. Under this interpretation of the statute, any delegation of board power – such as amendment authority – to the Benefits Committee is legally invalid. Countercl. Pl. Plan Amendments Reply at 18-22. Counterclaim plaintiffs cite no Maryland court that agrees with their reading of the statute, and the only court to have apparently considered this aspect of the statute squarely rejected the interpretation counterclaim plaintiffs ask of this Court. *See Krishan v. McDonnell Douglas Corp.*, 873 F. Supp. 345, 353 (C.D. Cal. 1994). Moreover, the plain language of the statute is ambiguous as to whether a director must be a member of any committee exercising board power, or whether such a committee must be comprised exclusively of directors. To hold that a committee exercising board authority must be comprised exclusively of directors would conflict with another provision of Maryland corporate law, Md. Code Ann., Corps. & Ass'ns § 2-414(a), which permits an *officer* to act on authority granted by board resolution. This Court therefore will not grant partial summary judgment to counterclaim plaintiffs under this line of reasoning.

## B. *Statute of Limitations*

Counterclaim defendants also argue that the claim relating to the October 20, 1999 amendment to the Qualified Plan is time-barred.  The applicable statute of limitations for a breach of fiduciary duty claim under ERISA is six years from the date of the last action constituting a part of the breach, or three years from the date a plaintiff first had actual knowledge of the breach.  29 U.S.C. §§ 1113(1)-(2).[5]  Counterclaim defendants contend that the three-year statute of limitations should apply because knowledge of the 1999 amendment was widespread throughout the company, and that Louis Hejl, Jr., ULLICO's director of corporate benefits, was present at the Benefits Committee meeting when the amendment was adopted.  Countercl. Def. Mot. at 25-27.  These facts do indicate that ULLICO had knowledge that the Benefits Committee had amended the Qualified Plan.  But what the facts fail to establish is whether knowledge of the amendment also communicated the existence of a breach of fiduciary duty.  *See Fink v. Nat'l Sav. and Trust Co.*, 772 F.2d 951, 957 (D.C. Cir. 1985); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992).

Actual knowledge of a breach or violation requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists.  *See Gluck*, 960 F.2d at 1177.  Hejl did not have that knowledge; he was unaware that the Benefits Committee may have lacked amendment authority until

---

[5] In cases of fraud or concealment, an action may be commenced up to six years after the date of discovery of the breach.  29 U.S.C. § 1113.

2003. Countercl. Pl. Facts ¶ 75. Counterclaim defendants provide no basis for this Court to conclude that the other ULLICO employees aware of the amendment knew of its alleged illegality. Therefore, because counterclaim plaintiffs brought their actions well before the six-year statute of limitations on these claims, the breach of fiduciary duty cause of action based on the 1999 amendment is not time-barred.

## C. Stock Repurchases

Disputed issues of fact also preclude summary judgment on the breach of fiduciary duty claim rooted in the stock repurchases. Counterclaim defendants rest their argument on three foundations: (1) the decision to tender the Qualified Plan's stock was "in the best interests of the Plan," Countercl. Def. Mot. at 29-37; (2) a decision not to tender the Qualified Plan's stock would not have prevented the stock repurchase plan from going forward, Countercl. Def. Mot. at 39-41; and (3) ULLICO repurchased the Qualified Plan's stock for well above its actual value, which constituted adequate consideration, Countercl. Def. Mot. at 37-38. All of these facts are disputed by the counterclaim plaintiffs. The ULLICO parties argue that (1) counterclaim defendants redeemed the Qualified Plan's shares, not because they were acting "in the best interests of the Plan," but in order to ensure they could redeem their own shares, Countercl. Pl. Opp. at 17-20; (2) it is "more likely than not" that had the Qualified Plan not tendered its shares, the repurchase program would not have gone forward, Countercl. Pl. Opp. at 21-22; and (3) the Qualified Plan's shares were subject to proration and, therefore, the plan did not

receive adequate consideration, Countercl. Pl. Opp. at 22.  These are factual

disputes that cannot be resolved on summary judgment.  Therefore, counterclaim

defendants' motion for summary judgment on Count I as to the stock repurchase

claim is DENIED.

## II.   Breach of Fiduciary Duty to the Welfare and Auxiliary Plans

Counterclaim plaintiffs argue that counterclaim defendants' alleged self-

dealing, which resulted in internal and government investigations costing millions

of dollars, harmed the Welfare and Auxiliary plans because ULLICO funded those

plans out of its general treasury.  However, despite whatever harm counterclaim

defendants may have done to ULLICO, they cannot, as a matter of law, be liable

under ERISA's fiduciary provisions for decisions they made as corporate officers.

As with the allegations of breach of fiduciary duty to the Qualified Plan, the

threshold question with these claims is "whether that person was acting as a

fiduciary (that is, was performing a fiduciary function) when taking the action

subject to complaint." *Pegram*, 530 U.S. at 225.  An employee assumes fiduciary

status "when and to the extent that they function in their capacity as plan

administrators, not when they conduct business that is not regulated by ERISA."

*Sys. Council EM-3 v. AT&T Corp.*, 972 F. Supp. 21, 30 (D.D.C. 1997) (internal

quotations omitted); *see also Barry v. Trustees of the Int'l Ass'n Full-Time*

*Salaried Officers and Employees of Outside Local Unions*, 404 F. Supp. 2d 145,

151 (D.D.C. 2005) ("the ERISA statute recognizes that individuals may be both

ERISA plan fiduciaries and officers or other employees in a corporation").  The

allegations with respect to the Welfare and Auxiliary plans clearly implicate the counterclaim defendants' roles as corporate officers rather than plan fiduciaries.

Counterclaim plaintiffs do not allege that the counterclaim defendants' actions harmed the Welfare and Auxiliary plans directly. Instead, they argue that counterclaim defendants harmed ULLICO, and, because the Welfare and Auxiliary plans were funded from the ULLICO general treasury, those plans were also harmed. Countercl. Pl. Opp. at 23-25. Yet the investigations targeting the company, the alleged source of ULLICO's inability to fund the plans, focused on "business that is not regulated by ERISA," *Sys. Council EM-3*, 972 F. Supp. at 30, such as the implementation of a stock repurchase program. An indirect link between these business decisions and the ability of the company to fund the plans does not constitute an exercise of management or authority over the plans. *See Barry*, 404 F. Supp. 2d at 153 (finding defendant's "fiduciary obligations did not apply to his involvement in ULLICO's purchase and repurchase programs because he did not exercise management or authority over either the Plan or Plan assets when he took that action"). The Committee Member defendants were therefore not acting in their ERISA fiduciary capacity and cannot be held liable for a breach of fiduciary duty to these plans.

Counterclaim plaintiffs' reliance on the Second Circuit's analysis of a similar case is unavailing. In *United States v. Carson*, 52 F.3d 1173, 1189-90 (2d Cir. 1995), the court found that a fiduciary could be held liable under ERISA based on damage to the plan sponsor. But the Second Circuit did not analyze

whether the defendant was acting in a fiduciary or corporate capacity at the time

he harmed the plan sponsor. *Id.* And, to the extent that *Carson* stands for the

proposition that an ERISA fiduciary can be held liable for his corporate acts when

those acts harm the benefits plan, the Supreme Court overruled that holding in its

later decision in *Pegram.* 530 U.S. at 225-56. Since *Pegram*, courts have

consistently rejected attempts to hold corporate officers liable under ERISA for

corporate activities that have an indirect effect on a company plan. *See, e.g.*,

*Holdeman v. Devine*, 474 F.3d 770, 780 (10th Cir. 2007).

Thus, for all of the above reasons, summary judgment is GRANTED for

counterclaim defendants as to Counts II and III of the Consolidated Counterclaim.

### III. Breach of Fiduciary Duty to the Auxiliary and Deferred Compensation Plans

The claim of breach of fiduciary duty to the Auxiliary Plan fails for a

second reason: the Auxiliary Plan is a top hat plan that is exempt from ERISA's

fiduciary requirements. The Deferred Compensation Plan also falls into this

category. Countercl. Def. Facts ¶ 149. Because neither of these plans is governed

by ERISA's fiduciary provisions, the Committee Member defendants could not

have breached their fiduciary duties to the plans.

Top hat plans are unfunded plans "maintained by an employer primarily for

the purpose of providing deferred compensation for a select group of management

or highly compensated employees." 29 U.S.C. § 1051(2). These plans are wholly

exempt from ERISA's fiduciary requirements. *See Carabillo v. ULLICO, Inc.*,

19

357 F. Supp. 2d 249, 258 (D.D.C. 2004) (ERISA "expressly exempts [top hat]

plans from its fiduciary duty, vesting, and funding provisions."). There is "no

cause of action for breach of fiduciary duty involving a top hat plan[,]" *Goldstein*

*v. Johnson & Johnson*, 251 F.3d 433, 443 (3d Cir. 2001), and counterclaim

defendants owed no fiduciary duty to either the Auxiliary Plan or the Deferred

Compensation Plan. Counterclaim defendants' motion for summary judgment as

to the breach of fiduciary duty to these plans is therefore GRANTED.[6]

Yet counterclaim plaintiffs do not restrict their breach of fiduciary duty

claims solely to the Deferred Compensation Plan. They additionally argue that the

counterclaim defendants breached their fiduciary duty to ULLICO, and that breach

should serve as a basis to deny them benefits under the Deferred Compensation

Plan. Countercl. Pl. Opp. at 26 ("[T]he duties breached by Counterclaim

Defendants under Count VI stem not only from their positions as fiduciaries to the

Deferred Compensation Plan, *but also from their duties owed to ULLICO Inc.*

*under state corporate law*[.]") (emphasis added). Committee Member defendants

---

[6] Counterclaim plaintiffs also argue that Counts II, III, and VI properly arise under ERISA § 502(a)(3), Countercl. Pl. Opp. at 25 n.2, 28-29, which allows courts to fashion equitable relief to redress violations of either ERISA or the terms of the plans. 29 U.S.C. § 1132(a)(3). To the extent that counterclaim plaintiffs claim equitable relief under ERISA § 502(a)(3) for the alleged breaches of fiduciary duty, their argument must fail. With 29 U.S.C. § 1104(a)(1), Congress provided adequate relief for the breaches of fiduciary duty counterclaim plaintiffs complain of; simply because counterclaim plaintiffs have failed to prevail under that section does not entitle them to avail themselves of ERISA's catch-all provision. *See Varity Corp.*, 516 U.S. at 515 (in construing ERISA § 502(a)(3), courts should respect "policy choices reflected in the inclusion of certain remedies and the exclusion of others") (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). To the extent counterclaim plaintiffs argue that counterclaim defendants violated plan terms, this claim, too, must fail. The ULLICO parties specifically alleged in the counterclaim that Grelle, Luce, and Carabillo breached their fiduciary duties, but they did not allege any violation of plan terms until they filed their opposition to counterclaim defendants' motion for summary judgment. Counterclaim defendants did not have fair notice of the claim, and to raise it at this late stage is insufficient to withstand summary judgment. *See Ali v. Dist. of Columbia*, 278 F.3d 1, 8 (D.C. Cir. 2002); *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983) (holding that complaint must give "defendant fair notice of plaintiff's claim and the grounds on which it rests").

counter that this fiduciary duty – which is rooted in state law – is preempted by ERISA.  Countercl. Def. Mot. at 46-47.

This Court has squarely rejected counterclaim defendants' argument in the past, *Carabillo*, 357 F. Supp. 2d at 259 n.7, and they have provided no valid reason for the Court to change its position.  While ERISA preempts state law claims that "relate to any [ERISA] employee benefit plan," 29 U.S.C. § 1144(a), "'run-of-the-mill' state law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" are not subject to ERISA preemption. *Carabillo*, 357 F. Supp. 2d at 259 n.7 (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988)).  This Court held that the allegations of breach of fiduciary duty to ULLICO were not preempted because they "derive from the counterclaim defendants' obligations and responsibilities as officers of the corporation under state corporate law, rather than their relationship to the [Auxiliary and Deferred Compensation] plans as beneficiaries." *Id.*; *see also* Mem. Op. and Order, March 29, 2005 [Dkt. #101], at 6 n.11.  The claims here are no different, and they are not preempted by ERISA.

Counterclaim defendants further assert that this state law claim is outside the scope of the Court's supplemental jurisdiction.  Once again, I disagree. Pursuant to 28 U.S.C. § 1367(a), courts may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  The "case or controversy" analysis

is significantly broader, and can conceivably capture more claims, than the preemption question. Indeed, I previously decided that a claim that the former corporate officers were not entitled to benefits under the Deferred Compensation Plan because the plan "was administered in violation of the fiduciary duties owed to ULLICO" fell within this Court's supplemental jurisdiction and was not preempted by ERISA. *Carabillo*, 357 F. Supp. 2d at 256, 259. In short, I found that there was a "factual nexus" between counterclaim defendants' ERISA claims and the counterclaim plaintiffs' argument that benefits cannot be paid out under the Deferred Compensation Plan. *Carabillo*, 357 F. Supp. 2d at 259. The same holds true here, and therefore Count VI falls within the Court's supplemental jurisdiction.

Thus, while the breach of fiduciary duty claims as to the Deferred Compensation and Auxiliary plans are dismissed, the claim that counterclaim defendants breached their fiduciary duty to ULLICO, and therefore their benefits from the Deferred Compensation Plan may be disgorged or denied, survives the counterclaim defendants' summary judgment motion.[7]

## IV.   Professional Negligence

In Count IV of its Consolidated Counterclaim, the sole claim unrelated to a breach of fiduciary duty, counterclaim plaintiffs allege that Carabillo committed

---

[7] Counterclaim defendants further argue that the Auxiliary and Deferred Compensation plans prohibit forfeiture or setoff, and therefore Counts III, V, and VI – all requesting forfeiture or setoff as relief for the alleged breaches of fiduciary duty – should be dismissed. Countercl. Def. Mot. at 49-53. To succeed, counterclaim defendants must show that the contractual language was "specific and precise" in explaining the intent of the parties to preclude setoff. *In re Carlyle*, 242 B.R. 881, 892 (Bankr. E.D. Va. 1999). The terms of the Auxiliary and Deferred Compensation plans are, at best, ambiguous as to whether they prohibit forfeiture or setoff, and the Court therefore will not grant summary judgment on the basis of this argument.

professional negligence by providing erroneous legal advice to the Benefits Committee regarding its ability to amend the Qualified Plan. The ULLICO parties moved for partial summary judgment on this issue, as did the Committee Member defendants. Committee Member defendants argue, among other things, that this count should be dismissed as outside the Court's supplemental jurisdiction. The Court previously dismissed a nearly identical claim because it did not relate to Carabillo's affirmative claims for plan benefits, *Carabillo*, 357 F. Supp. 2d at 255-56, and counterclaim plaintiffs have pointed to no change in the claim that would bring it within the Court's supplemental jurisdiction.

Under this Court's prior ruling, the only counterclaims that fall within the scope of the litigation "are those that relate to whether Carabillo and other former ULLICO officers are entitled to the retirement benefits they claim they are eligible to receive." *Carabillo*, 357 F. Supp. 2d at 255. Count IV falls well short of that criteria. The claim seeks no offset from Carabillo's retirement benefits; the only relief sought is a money judgment from Carabillo's general assets. Counterclaim ¶ 131 & Prayer for Relief. The Court dismissed this allegation in its previous iteration, Count II of ULLICO's Amended Answer and Counterclaim, because it was "essentially a state law claim with little, or no, factual nexus to Carabillo's ERISA claim." Mem. Op. and Order, March 29, 2005 [Dkt. #101], at 5. The same holds true for Count IV of the Consolidated Counterclaim. Summary judgment on this claim is therefore GRANTED.

## CONCLUSION

A genuine issue of material fact exists as to Count I – breach of fiduciary duty to the Qualified Plan – and both parties' motions for summary judgment on that claim are therefore DENIED.  Counterclaim defendants are entitled to judgment as a matter of law on three claims: (1) breach of fiduciary duty to the Welfare Plan (Count II), (2) breach of fiduciary duty to the Auxiliary Plan (Count III), and (3) professional negligence against Carabillo (Count IV).  The motion for summary judgment as to these claims is therefore GRANTED.  Counterclaim defendants are also entitled to judgment as a matter of law on the allegation that they breached their fiduciary duty to the Deferred Compensation Plan, but not on the allegation that they breached their fiduciary duty to ULLICO, and therefore summary judgment on Count VI is GRANTED in part and DENIED in part.  The final count – requesting setoff of Auxiliary Plan benefits as relief for the alleged breach of fiduciary duty to ULLICO (Count V) – cannot be decided on summary judgment, and the motion as to that count is DENIED.

RICHARD J. LEON
United States District Judge